Docket No. 102962.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* DEVINE, Petitioner, v. THE HONORABLE PAUL STRALKA, Respondent.

*Opinion filed October 18, 2007.*

CHIEF JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke specially concurred, with opinion, joined by Justices Freeman and Fitzgerald.

## OPINION

The question presented in this case is whether the circuit court exceeded its lawful authority when it vacated a juvenile delinquency finding over 11 months after the date the minor pled guilty and was sentenced for the offense. We must also consider whether *mandamus* relief would now be appropriate to compel the court to reinstate the delinquency finding.

The State filed a petition for adjudication of wardship pursuant to section 5–520 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5–520 (West 2004)), alleging that D. D., a minor, was delinquent because he committed the offense of unauthorized possession or storage of a weapon (720 ILCS 5/21–6 (West 2004)). The circuit court accepted the minor's guilty plea and sentenced him to 12 months of probation and other conditions. Nearly one year later, Cook County Circuit Court Judge Paul Stralka granted the minor's motion to vacate the delinquency finding. The State filed a motion with this court for leave to file a petition for a writ of *mandamus* or prohibition, arguing that the judge's order granting the motion to vacate exceeded his lawful authority. We allowed the State's motion. See 188 Ill. 2d R. 381.

BACKGROUND

D.D. was a 16-year-old with no prior criminal record at the time he was arrested by the Berwyn police on May 16, 2005, for possessing a folding knife with a three-inch blade at his school, Morton West High School. The police report of the incident indicates that a student matching D.D.'s description was observed carrying a knife. A police detective was called to the scene, and he asked D.D. if he had anything on him that he was not supposed to have. D.D. responded, "Yes, look in my right pants pocket." The detective then recovered a knife from D.D. D.D. told police that he had not brought the item to school for any particular reason other than that he simply liked to carry it.

On May 17, 2005, the State filed a petition for adjudication of wardship in connection with the crime, charging D.D. with unauthorized possession or storage of a weapon–a Class A misdemeanor (720 ILCS 5/21–6 (West 2004)). The State and the minor entered into plea negotiations, and D.D. agreed to plead guilty in exchange for the State's recommendation that he be sentenced to one year of probation and 30 hours of community service.

At the guilty plea hearing on June 23, 2005, defense counsel filed a motion requesting that the guilty plea be vacated upon successful completion of probation. The State told the court that it opposed the motion to vacate, but that it would "stand by" the offer it made to

defense counsel. Defense counsel responded that he too would "stand by the agreement," but that the minor wanted to have the opportunity to have the adjudication erased from his record. The court then stated that it would accept the plea agreement and sentence the minor to one year of probation, 30 days of community service and order him to participate in the victim-impact and violence-prevention programs. Finally, the court stated that it would "enter and continue" the motion to vacate the delinquency adjudication over the State's objection. The court set a one-year status date for June 2, 2006.

On June 6, 2006, a hearing on the motion to vacate was held before Judge Stralka. D.D.'s probation officer informed the court that the minor had successfully completed community service and the victim-impact and violence-prevention programs. The probation officer further reported that the minor had taken his G.E.D. test, was working full time and had not caused any problems.

The State objected to vacating the delinquency finding, emphasizing the seriousness of the charge and also noting that a full year had not passed since the probation order was entered. Judge Stralka granted the motion to vacate the delinquency finding. He also ordered that D.D.'s probation be terminated and the case closed.

The Cook County State's Attorney filed a motion in this court for leave to file a petition for a writ of *mandamus* or prohibition (see 188 Ill. 2d R. 381(a)), arguing that the order granting the motion to vacate was unlawful. This court granted the motion, and the parties filed briefs before this court. A special assistant Attorney General was appointed to represent Judge Stralka, who is a nominal party to the proceeding under Supreme Court Rule 381(c) (188 Ill. 2d R. 381(c)).

ANALYSIS

A writ of *mandamus* may be awarded if the petitioner establishes a clear legal right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ, as well as the lack of other adequate remedies. *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 465 (2004). Although *mandamus* generally provides affirmative rather than prohibitory relief (*People ex rel. Waller v. McKoski*, 195 Ill. 2d 393, 398 (2001)), it can be used to

compel the undoing of an act (*Noyola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121, 133 (1997)).

Similarly, a writ of prohibition may be used to " 'prevent a judge from acting where he has no jurisdiction to act or to prevent a judicial act which is beyond the scope of a judge's legitimate jurisdictional authority.' " *People ex rel. Foreman v. Nash*, 118 Ill. 2d 90, 97 (1987), quoting *Daley v. Hett*, 113 Ill. 2d 75, 80 (1986). There are four requirements that must be met before a writ of prohibition may be issued: (1) the action to be prohibited must be judicial or quasi-judicial in nature; (2) the jurisdiction of the tribunal against which the writ issues must be inferior to that of the issuing court; (3) the action prohibited must be outside the tribunal's jurisdiction or, if within its jurisdiction, beyond its legitimate authority; and (4) the petitioner must be without any other adequate remedy. *Zaabel v. Konetski*, 209 Ill. 2d 127, 131-32 (2004). We have also held that *mandamus*-type relief may be awarded when the issues involved are of great importance to the administration of justice even if all the normal criteria for its issuance are not satisfied. *People ex rel. Carey v. White*, 65 Ill. 2d 193, 197 (1976).

We believe that the points raised by the parties correspond mostly closely with the question of whether a writ of prohibition is appropriate under the circumstances. The key inquiry here, then, is whether the action taken by Judge Stralka in vacating the lawfully entered delinquency finding almost one year after it was entered based on the minor's subsequent good behavior was either (1) outside of the court's jurisdiction, or (2) beyond the judge's legitimate authority. The State contends that the judge's action exceeded his lawful authority because it runs contrary to a number of well-established legal principles, including this court's rules on how guilty pleas may be vacated, the important statutory distinctions between court supervision and probation, the exclusive authority of the governor to grant clemency, and the comprehensive legislative scheme for the expungement and sealing of delinquency findings.

D.D. and Judge Stralka respond by arguing that the action taken was within the judge's authority because the Juvenile Court Act confers broad discretion and equitable powers upon juvenile court judges to provide an individualized assessment of juvenile offenders and to fashion orders that promote rehabilitation.

-4-

We begin our analysis with an overview of the relevant provisions of the Act. Section 5–325 of the Act provides that law enforcement is to forward information to the State's Attorney whenever law enforcement has knowledge that a crime has been committed by a minor. 705 ILCS 405/5–325 (West 2004). The Act further provides that the State's Attorney may file a delinquency prosecution against a minor, alleging that the minor is delinquent and praying that he be made a ward of the court. 705 ILCS 405/5–501 (West 2004). The State's Attorney is then given full discretion to prosecute if he or she has probable cause to believe that the minor has committed a crime. 705 ILCS 405/5–330 (West 2004).

Delinquency proceedings based on a petition filed by the State's Attorney are separated into three judicial determinations or phases–a findings phase, an adjudicatory phase and a dispositional phase. The first phase involves a trial and a determination of guilt. See 705 ILCS 405/5–601 through 5–625 (West 2004). The two later phases occur at a sentencing hearing and involve a determination of wardship and a sentencing disposition. See 705 ILCS 405/5–701 through 5–705 (West 2004).

Once a petition is filed alleging that a minor is delinquent, a trial must be held within 120 days of a written demand made by any party. 705 ILCS 405/5–601(1) (West 2004). "[B]efore proceeding to adjudication, or after hearing the evidence at the trial," the court may enter an order for supervision for certain offenses if the minor admits or stipulates to the facts supporting the petition *and if the State's Attorney does not object to supervision*. 705 ILCS 405/5–615(1) (West 2004). If the court grants supervision, the case is continued for a period of time that may not exceed two years. 705 ILCS 405/5–615(4) (West 2004). The court may, as a condition of supervision, require that the minor comply with a host of conditions that includes, but is not limited to, the following: the minor not violate any criminal statute; the minor work or pursue a course of study or vocational training; the minor attend school; and/or the minor perform some reasonable public or community service. 705 ILCS 405/5–615(5) (West 2004). The court is authorized to terminate supervision at any time if warranted by the conduct of the minor and the ends of justice. 705 ILCS 405/5–615(4) (West 2004).

The Act clearly provides that if court supervision is not an option because of the State's Attorney's objection, the cause must proceed through to the conclusion of the findings stage. 705 ILCS 405/5–615 (West 2004). Once the cause proceeds to trial, the statute charges that the court "shall consider the question whether the minor is delinquent." 705 ILCS 405/5–605(3)(a) (West 2004). The reasonable doubt standard of proof and the rules of evidence in criminal cases are applicable at the trial. 705 ILCS 405/5–605(3)(a) (West 2004). The trial court may also accept a plea of guilty before or during trial. Upon acceptance of the plea, the court shall determine the factual basis for the plea. 705 ILCS 405/5–605(2)(a) (West 2004). The court must also make and note in the minute of proceedings a finding of whether or not the minor is guilty. 705 ILCS 405/5–620 (West 2004).

The second stage is where the court decides whether or not to adjudicate the minor a ward of the court. If the court has found that the minor is guilty, it shall set a time for a sentencing hearing to be conducted under section 5–705 of the Act. 705 ILCS 405/5–620 (West 2004). Section 5–705 requires the court to conduct a sentencing hearing to determine whether it is in the best interests of the minor and the public that the minor be made a ward of the court. 705 ILCS 405/5–705(1) (West 2004).

If the trial court determines that the minor is to be made a ward of the court, the court shall determine at the third stage the proper disposition best serving the interests of the minor and the public. 705 ILCS 405/5–705(1) (West 2004). The possible sentencing dispositions under the Act include probation, conditional discharge, placement in legal custody or guardianship, or commitment to the Department of Corrections, Juvenile Division. 705 ILCS 405/5–705(1) (West 2004). The court may terminate probation at any time if warranted by the conduct of the minor and the ends of justice, provided, however, that the period of probation for a minor found guilty of first degree murder, a Class X felony, or a forcible felony shall be at least five years. 705 ILCS 405/5–715(1) (West 2004). Unless the sentencing order so provides, it does not operate to close proceedings on the pending petition, but is subject to modification until final closing and discharge of the proceedings. 705 ILCS 405/5–710(3) (West 2004). Whenever the court finds that the best interests of the minor and the public no longer require the wardship of the court, the court shall

order the wardship terminated and all proceedings under the Act respecting that minor finally closed and discharged. 705 ILCS 405/5–755(2) (West 2004). Except for one limited exception, the wardship and proceedings automatically terminate when the minor attains the age of 21 and all proceedings are finally closed and discharged. 705 ILCS 405/5–705(1) (West 2004).

Where, as here, the circuit court's power to act is controlled by statute, the court must proceed within the strictures of the statute, and may not take any action that exceeds its statutory authority. *In re Jaime P.*, 223 Ill. 2d 526, 540 (2006). Moreover, a court exercising jurisdiction over a minor pursuant to the provisions of the Act is not at liberty to reject or embellish its statutory authority even if there is a perceived need or desirability for such action. *In re Jaime P.*, 223 Ill. 2d at 540.

From the foregoing overview of the Act, we believe that it is clear that a trial judge has no discretion to vacate a finding of delinquency under the circumstances of the present case. The Act gives the State's Attorney discretion to prosecute violations of the criminal law in juvenile court and further gives him or her the right to proceed to trial and reject court supervision. Placing the minor on probation and later vacating the delinquency finding, as was done here, is tantamount to granting supervision, and it essentially circumvents the State's right to reject supervision.

The legislature has expressly provided that probation is an appropriate sentencing option for a minor who is found guilty (705 ILCS 405/5–710(a)(1) (West 2004)), but supervision is only available "before proceeding to adjudication" and if the State's Attorney consents (705 ILCS 405/5–615(1) (West 2004). See also *In re R.R.*, 92 Ill. 2d 423, 428 (1982) (only those minors found delinquent may be placed on probation, but supervision may issue without any finding of delinquency). Upon completion of trial, the court must consider whether or not the minor is guilty, and it has no discretion not to make that determination in the absence of the State's consent to supervision. Similarly, the court must determine the factual basis for a guilty plea and enter a finding of delinquency if it accepts the plea, as it did in this case. Nothing in the Act gives the trial court the authority to avoid these determinations or to vacate them later due to the subsequent good behavior of the minor and his completion of the sentence imposed.

Judge Stralka argues that what was done in the present case differs from court supervision because the minor was held accountable for his crime. But we fail to see how the minor was held any more accountable for his crime than if court supervision had been imposed. The same level of accountability exists in both situations. With supervision, the same conditions that were imposed in the present case could have been imposed, and if a minor violated the conditions he could have been found delinquent or if he satisfied the conditions he could have avoided the finding. In both situations, the minor ends up in the same place. And again, the action taken here essentially collapses the distinction between supervision and probation. The statute simply does not give the court the authority to decide, in the face of an objection by the State, that even though a juvenile is guilty of a crime, the nature of the conduct does not warrant prosecution or a finding of guilt. Nor does it allow the court to later vacate a finding of guilt upon completion of the sentence. Instead, the statute gives the court discretion to decide whether or not to adjudicate the minor a ward of the court and the proper sentence to be imposed, if any.

D.D. and Judge Stralka argue that section 5–710(3) of the Act gives the court authority to vacate a delinquency finding at any time until the proceedings are finally closed and discharged. But this interpretation misreads the statute. It is true that the juvenile court judge retains jurisdiction over the wardship and sentencing aspects of the case until the minor reaches the age of 21 or the judge enters a final order closing the case and discharging the minor. 705 ILCS 405/5–755(1), (2), (3) (West 2006). But this does not specifically authorize the undoing of a delinquency finding. Instead, the continuing jurisdiction of the juvenile court is designed to promote rehabilitation by allowing the court to monitor the juvenile and to modify the dispositional order as necessary. See 705 ILCS 405/5–101(1)(c), (2)(h), 5–710(3), 5–715(1) (West 2006). The Act does not give any authority to vacate the delinquency finding itself. Section 5–710(3) clearly and unambiguously allows for the modification of the *sentencing order*, not the delinquency finding. It provides that "Unless the *sentencing order* expressly so provides, *it* does not operate to close proceedings on the pending petition, but *is subject to modification* until final closing and discharge of the proceedings under

Section 5–750."[1] (Emphases added.) 705 ILCS 405/5–710(3) (West 2004).

The action taken here also runs afoul of a number of other established legal principles, including the way final sentencing orders are normally treated. A finding of guilt and a finding of delinquency are the same in a juvenile delinquency case (*In re J.N.*, 91 Ill. 2d 122, 128 (1982)), and that finding coupled with the disposition is a final and appealable judgment under the Act (see *In re D.D.*, 212 Ill. 2d 410, 418 (2004); *In re W.C.*, 167 Ill. 2d 307, 326 (1995); *In re J.N.*, 91 Ill. 2d at 127-28)). Even though the sentencing disposition creates the final and appealable order, the sentencing disposition itself is subject to modification in the trial court until final closing and discharge of the minor, which only automatically occurs when the minor reaches 21 years of age. See *In re W.C.*, 167 Ill. 2d at 326. Nothing in the Act or the case law of this state, however, gives the delinquency finding the same status so that it too can be modified at any time. Instead, juvenile court judges are restricted to considering timely motions to withdraw guilty pleas pursuant to Supreme Court Rule 604(d) (210 Ill. 2d R. 604(d)). See *In re J.T.*, 221 Ill. 2d 338, 346 (2006). The trial court is also authorized to grant section 2–1401 petitions in juvenile delinquency matters. See *In re William M.*, 206 Ill. 2d 595, 604-05 (2003); 735 ILCS 5/2–1401 (West 2004). But such relief from a final judgment cannot be based on evidence that did not exist at the time of the judgment, such as defendant's good behavior after conviction. *People ex rel. Carey v. Rosin*, 75 Ill. 2d 151, 158 (1979).

D.D. and Judge Stralka argue that even if section 5–710(3) of the Act does not confer authority to vacate a delinquency finding, such authority exists based on the broad discretion afforded by the Act to rehabilitate minors and to provide an individualized assessment. We disagree.

---

[1] Section 5–750 provides for termination of a minor's commitment to the Department of Corrections, Juvenile Division, upon attaining the age of 21 and automatic termination of proceedings. 705 ILCS 405/5–750 (West 2004).

While rehabilitation of the minor remains one of the chief goals of the Act (*In re Rodney H.*, 223 Ill. 2d 510, 520 (2006)), this goal must be reconciled with the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law (*In re Jaime P.*, 223 Ill. 2d at 535-36; *People v. Taylor*, 221 Ill. 2d 157, 165-67 (2006)). This court recently reiterated this precept by stating that

> "The Juvenile Court Act was 'radically altered' when the General Assembly amended the Act with Public Act 90–590, effective January 1, 1999. *Taylor*, 221 Ill. 2d at 165, citing 705 ILCS Ann. 405/5–101 *et seq.* (Smith-Hurd 1999). 'The amendatory changes renumbered the sections and largely rewrote article V of the Act to provide more accountability for the criminal acts of juveniles \*\*\*.' *Taylor*, 221 Ill. 2d at 165. The 1999 amendments provided a new purpose and policy section, which begins: '(1) It is the intent of the General Assembly to promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system that will protect the community, impose accountability for violations of law and equip juvenile offenders with competencies to live responsibly and productively.' 705 ILCS 405/5–101(2) (West 1998). This policy statement 'represents a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law.' *Taylor*, 221 Ill. 2d at 167; *In re A.G.*, 195 Ill. 2d 313, 317 (2001)." *In re Jaime P.*, 223 Ill. 2d at 535-36.

Specifically, the purpose and policy section of article V declares the following to be important purposes to effectuate the intent of the legislature:

> "(a) To protect citizens from juvenile crime.
>
> (b) To hold each juvenile offender directly accountable for his or her acts.
>
> (c) To provide an individualized assessment of each alleged and adjudicated delinquent juvenile, in order to rehabilitate and to prevent further delinquent behavior through the development of competency in the juvenile offender. As

-10-

used in this Section, "competency" means the development of educational, vocational, social, emotional and basic life skills which enable a minor to mature into a productive member of society." 705 ILCS 405/5–101(1)(a), (1)(b), (1)(c) (West 2004).

Our analysis of a statute is governed by a consideration of the legislature's objective in enacting it. *In re Jaime P.*, 223 Ill. 2d at 535-36. Here, we believe the legislature intended to hold juveniles accountable for their crimes by giving discretion to the State's Attorney to reject court supervision and to proceed to prosecution. The finding of guilt and a disposition of probation constitute a final and appealable order. While the disposition can be modified, nothing in the Act allows for–and we do not believe that the legislature intended–a delinquency finding to be vacated in the manner and under the circumstances presented here. Our interpretation is consistent with the overriding concerns of the Act of protecting the public and holding juvenile offenders accountable.

There are also a number of collateral ways that the public is protected by the finding of delinquency. Other statutes require that minors who are found delinquent based on certain sex offenses register with law enforcement (730 ILCS 150/1 *et seq.* (West 2004)), and that minors who are adjudicated delinquent for a violation of the law that would be a felony in criminal court provide DNA samples (730 ILCS 5/5–4–3 (West 2004)). The act of vacating a finding of delinquency would jeopardize enforcement of these provisions, as minors who have had their findings of guilt vacated would no doubt seek to have their information removed from the sex offender registry and their samples removed from the State Police database. This might also have the incongruous effect of making the procedure of vacating a finding of delinquency upon completion of probation an even more lenient disposition than court supervision under the Act, at least in felony cases, even though a continuance under supervision is supposed to be the most lenient disposition available for delinquency petitions under the Act, except for dismissal. See *In re T.W.*, 101 Ill. 2d 438, 440 (1984). This is because the requirement for DNA submission is triggered upon a disposition of court supervision or a finding of delinquency in juvenile court for any felony. See 730 ILCS 5/5–4–3 (West 2004). But if a delinquency finding is vacated, it is unclear

whether police could continue to have access to the minor's genetic information.

Additionally, Judge Stralka's order vacating the delinquency finding interferes with the statutory scheme for expungement of juvenile law enforcement and court records. Section 5–915 of the Act provides two different subsections for expunging records, with different criteria and time limits for obtaining expungement. 705 ILCS 5/5–915(1), (2) (West 2004). Under the first subsection, a person can expunge his records if he has reached 17 years of age or all juvenile proceedings related to that person have been terminated, whichever comes later, but only in the following circumstances: (1) no petition was filed; or (2) the minor was not found delinquent of the offense; or (3) the minor was placed on court supervision and had it successfully terminated; or (4) the minor was adjudicated for a Class B misdemeanor or less. 705 ILCS 405/5–915(1) (West 2004). But the second subsection does not allow expungement for records related to a delinquency finding for a Class A misdemeanor, as was committed here, unless the minor has reached the age of 21 or five years have elapsed since all juvenile court proceedings relating to the minor have terminated, whichever is later. 705 ILCS 405/5–915(2) (West 2004). Thus, vacating the delinquency finding as if it never existed frustrates the purpose of the Act to hold minors accountable by preserving their court and law enforcement records for a longer period of time when they have committed serious misdemeanors or felonies.

The purposes of the Act with respect to rehabilitation and providing minors with an individualized assessment are adequately served by the statutory provisions that give the court discretion to modify the sentencing disposition. Judge Stralka was admirably promoting these concerns when he terminated the minor's probation early and closed the case based on the minor's good behavior. The judge, however, stepped just beyond the edge of his legitimate authority when he vacated the delinquency finding itself that was lawfully imposed 11 months previously.

The cases relied upon by D.D. and Judge Stralka for assertion of the court's general equitable powers as sufficient authority in this situation are distinguishable and do not support their position. In *In re M.R.H.*, 326 Ill. App. 3d 565 (2001), the State insisted on prosecution of a minor for retail theft after he stole $0.59 worth of merchandise.

The trial court denied the minor's motion for a station house adjustment because the State wanted to prosecute. The minor later filed a motion requesting that upon a finding of guilt, he not be adjudicated a ward of the court. Prior to a resolution of this motion, the minor pled guilty and was found guilty of retail theft. At the sentencing hearing, the court held that because the minor had already been found guilty, it did not have the power to allow the minor's motion not to adjudicate him a ward of the court. The court also concluded that, absent consent by the State, supervision was not an appropriate sentencing disposition. It then sentenced the minor to 12 months of probation.

The appellate court reversed and remanded the cause for further proceedings. *In re M.R.H.*, 326 Ill. App. 3d at 568. It found that the plain language of section 5–705 of the Act allows the court to determine whether it is in the best interests of the minor to be adjudicated a ward of the court and that such a determination must be made before the entry of the sentencing disposition. *In re M.R.H.*, 326 Ill. App. 3d at 568. Accordingly, the appellate court remanded the cause for a hearing to determine whether or not it was in the best interests of the minor or the public that he be made a ward of the court. *In re M.R.H.*, 326 Ill. App. 3d at 568. The court found that its resolution of the issue rendered it unnecessary for it to address whether the trial court had the authority to impose supervision after disposition. *In re M.R.H.*, 326 Ill. App. 3d at 568.

We find nothing in *In re M.R.H.* to support D.D.'s and Judge Stralka's position. The holding that the trial court possesses discretion not to adjudicate a minor a ward of the court following a delinquency finding is merely a straightforward application of the plain language of the statutory provisions that we have set forth above. If anything, *In re M.R.H.* actually supports the State's position, as the appellate court left intact the trial court's finding that it had no discretion to avoid prosecution of the minor and that it must proceed to a determination of guilt where the State insists on prosecution.

*In re St. Louis*, 67 Ill. 2d 43 (1977), is also not helpful to D.D. and Judge Stralka. There, the minor was arrested, photographed and fingerprinted. He was then released without any charges filed. His father brought a petition to expunge the records made of the arrest. Counsel for the minor brought the petition under the adult

expungement statute because, at that time, there was no similar provision in the Juvenile Court Act. Following a hearing, the circuit court granted the petition and allowed expungement, but did so based on its perceived equitable powers, not the adult statute. On appeal before this court, the State contended that absent statutory authority, a court may not order expungement, and that, even if the court had equitable authority to order expungement, there were no circumstances to justify use of the court's equitable powers.

This court affirmed the expungement order. *In re St. Louis*, 67 Ill. 2d at 48. It found that the circuit court possessed the inherent equitable authority to order expungement and that such authority was properly exercised. *In re St. Louis*, 67 Ill. 2d at 47-48. It offered two reasons for its holding. First, it was clear that if the arrestee were an adult he would be entitled to expungement, and second, even though the Juvenile Court Act was silent as to the expungement, this did not necessarily imply that such records could be retained where they served no discernible purpose. *In re St. Louis*, 67 Ill. 2d at 46-47. Finally, this court noted that the circuit court's order was consistent with the specific goal of the Juvenile Court Act to protect minors from the disclosure of information. *In re St. Louis*, 67 Ill. 2d at 47.

*In re St. Louis* was decided before the adoption of the Juvenile Court Act of 1987 with its many changes in the area of juvenile law. It was also decided long before this court's recent holding in *In re Jaimie P.* that the circuit court's power to act is controlled by statute in juvenile cases and that "the court must proceed within the statute's stricture's." *In re Jaimie P.*, 223 Ill. 2d at 540.

To the extent that *In re St. Louis* could somehow be used to assert any equitable power beyond the stricture's of the statute, it is easily distinguishable from the present case. Clearly, an adult in the same circumstances as D.D. would not be eligible for the same relief he seeks of vacating the judgment of guilt. Additionally, as we have explained above, vacating a delinquency finding would be incompatible with a number of procedural provisions of the Act and with its overriding policy concern of holding minors accountable for their crimes. The traditional equitable power of the juvenile court cannot be exercised in such a way as to be inconsistent with the apparent intent of the legislature. See *People ex rel. Carey v. White*, 65 Ill. 2d 193, 202 (1976).

CONCLUSION

We hold that, while a juvenile sentencing disposition is a final and appealable order and the circuit court retains jurisdiction to modify the sentencing disposition and wardship, nothing in the Act gives the circuit court the authority to modify the finding of delinquency once the disposition becomes final and appealable. Instead, this court has held that section 2–1401 petitions are applicable to juvenile cases and that Rule 604(d) strictly applies to juvenile cases. Here, the minor did not file a section 2–1401 petition, nor did he file a motion to vacate his guilty plea in compliance with Rule 604(d). Accordingly, the delinquency finding was not subject to modification 11 months after the minor was sentenced to probation.

For the foregoing reasons, the writ of prohibition is allowed and the circuit court of Cook County is directed to reinstate the finding of delinquency against D.D. and to vacate the portion of its order that vacated D.D.'s delinquency finding.

*Writ awarded.*

JUSTICE BURKE, specially concurring:

Today the court unanimously holds that the Juvenile Court Act does not authorize a circuit court to vacate a finding of delinquency subsequent to the juvenile's successful completion of probation. While I agree that, under the law, this is the correct determination, I write separately to express my concern that our decision takes away a valuable and necessary tool from the juvenile court judges of this state.

As the record reflects, for more than 30 years juvenile court judges have engaged in the practice of vacating delinquency findings following a juvenile's successful completion of probation. Juvenile court judges–like Judge Stralka, here–have utilized this practice as a means of dispensing justice and achieving fairness when, in the exercise of their discretion, the circumstances of a particular case warrant such action.

The stated purpose of the Juvenile Court Act of 1987 is "to secure for each minor subject hereto such care and guidance, preferably in his or her own home, as will serve the safety and moral, emotional,

-15-

mental, and physical welfare of the minor and the best interests of the community." 705 ILCS 405/1–2(1) (West 2004). I have every confidence that the judges who have vacated delinquency findings following a juvenile's successful completion of probation were acting in good faith, believing their actions to be an appropriate extension of the authority afforded them under the Act to modify orders of the court at any time "until final closing and discharge of the proceedings," where warranted by "the conduct of the minor and the ends of justice." See 705 ILCS 405/5–710(3), 5–715(1) (West 2004). I note, too, that, in some jurisdictions, juvenile court judges are given the authority, not only to modify, but to "set aside" or "vacate" a dispositional order. See N.Y. Fam. Ct. Act §355.1 (McKinney 1999). See also Ga. Code Ann. §15–11–40(b) (2005) ("An order of the court may also be changed, modified, or vacated on the ground that changed circumstances so require in the best interest of the child"); *In re Leslie M.*, 305 Md. 477, 481-82, 505 A.2d 504, 505-08 (1986) (court may vacate a finding of delinquency pursuant to a Maryland code provision, Rule 916(a), which permits the court to modify or vacate its order "if the court finds that action to be in the best interest of the child or the public"); *State v. T.M.*, 860 P.2d 1286 (Alaska App. 1993) (section 47.10.100(a) permits a juvenile court judge to "stay execution, modify, set aside, revoke, or enlarge a judgment or order" for a period of two years after adjudication).

Our determination that the Juvenile Court Act does not afford a trial judge "discretion to vacate a finding of delinquency" is based, in part, on the fact that the practice of "[p]lacing the minor on probation and later vacating the delinquency finding *** is tantamount to granting supervision, and it essentially circumvents the State's right to reject supervision." Slip op. at 7; 705 ILCS 405/5–615(1) (West 2004). Section 5–615(1) of the Act provides:

"Continuance under supervision.

(1) The court may enter an order of continuance under supervision for an offense other than first degree murder, a Class X felony or a forcible felony (a) upon an admission or stipulation by the appropriate respondent or minor respondent of the facts supporting the petition and before proceeding to adjudication, or after hearing the evidence at the trial, and (b) in the absence of objection made in open court by the minor,

his or her parent, guardian, or legal custodian, the minor's attorney *or the State's Attorney*." 705 ILCS 405/5–615(1) (West 2004).

As our opinion makes clear, under section 5–615(1), court supervision is not an available option if the State's Attorney objects. In such cases, the matter *must* proceed to the conclusion of the findings stage. See slip op. at 5. Consequently, although a juvenile court might have been able to achieve results similar to vacating a finding of delinquency by electing to grant a minor court supervision, the Act gives the State's Attorney discretion to deny the court this option. This was not always the case.

Prior to 1982, the statute did not permit the State's Attorney to object. In *In re T.W.*, 101 Ill. 2d 438, 440-41 (1984), we noted:

> "The portion of section 4–7(1) [now section 5–615(1)] requiring the State's Attorney's consent to a continuance under supervision was added by section 1 of Public Act 82–973. (Ill. Ann. Stat., ch. 37, par. 704–7, Historical Note, at 182 (Smith-Hurd Supp. 1982).) Prior to this amendment, the only parties whose consent was required were the minor or the minor's parents, guardian, custodian or responsible relative. (Ill. Rev. Stat. 1981, ch. 37, par. 704–7 [now 705 ILCS 405/5–615(1) (West 2004].) A continuance under supervision is the most lenient disposition available for delinquency petitions under the Juvenile Court Act, except for dismissal of the petition. If the parties entitled to voice objections to a continuance under supervision do not do so and the juvenile complies with the conditions imposed by the court, section 2–11(1)(c) of the Act (Ill. Rev. Stat., 1982 Supp., ch. 37, par. 702–11(1)(c) [now 705 ILCS 405/5–915(1)(c) (West 2004)]) permits the juvenile, after reaching age 17, to petition the court for expunction of all law-enforcement and juvenile records relating to incidents occurring before age 17. Thus, assuming court approval of the petition, the juvenile who successfully completes supervision may have his juvenile record expunged."

It is unclear why the legislature amended this portion of the statute to permit the State's Attorney to object.

I recognize that, in *In re T.W.*, we upheld the amendment in the face of a constitutional challenge, on separation of powers grounds, holding that *People v. Phillips*, 66 Ill. 2d 412 (1977), was "dispositive of the issue." See *In re T.W.*, 101 Ill. 2d at 441. However, I question the *T.W.* court's reliance on *Phillips*.

In *Phillips*, the issue was the constitutionality of sections 120.8 and 120.9 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1981, ch. 91½, par. 120.1 *et seq*.). See *Phillips*, 66 Ill. 2d at 414; *In re T.W.*, 101 Ill. 2d at 441. Pursuant to these sections, a defendant who was found by the court to be a drug addict, could elect to receive care in a licenced drug-treatment program as an alternative to being prosecuted on charges pending against him. Upon successful completion of the treatment program, the charges pending against the defendant would then be dismissed. However, if the defendant-addict was on probation or parole when the offense(s) was committed, the court would be unable to permit the defendant to elect the treatment alternative unless the probation or parole authority consented.

In my view, *Phillips* does not provide solid underpinning for the decision in *In re T.W.* First, *Phillips* did not involve a minor, nor did it interpret a statute within the Juvenile Court Act, an act which affords minors special protections and safeguards and directs judges to consider the best interests of the minors appearing before them. Moreover, in *Phillips*, the court distinguished the provisions of the Dangerous Drug Abuse Act from a California drug addict diversion statute found to be unconstitutional in *People v. Superior Court*, 11 Cal. 3d 59, 520 P.2d 405, 113 Cal. Rptr. 21 (1974), holding:

> "Our statute is readily distinguishable from the California statute. The required consent of the appropriate probation or parole authority in our act does not constitute a veto of the exercise of judicial authority. The participation of these officers is involved only in the determination of whether a defendant is eligible for consideration. If a defendant is not on probation or parole, naturally these officers are not involved, but if a defendant is on probation or parole and elects to take treatment under the plan it is necessary to have the cooperation of the probation or parole officer whose duty and responsibility it is to supervise the defendant. (See Ill. Rev. Stat. 1975, ch. 38, par. 204–4 (probation officer), and ch. 38,

par. 1003–14–2 (supervising parole officer).) Without the assured cooperation of these officers the success of any treatment program would be seriously jeopardized. It is only after the eligibility requirements are satisfied that the court determines whether or not the defendant should be admitted to treatment under the Act." *Phillips*, 66 Ill. 2d at 417-18.

In my view, section 5–615(1) of the Juvenile Court Act is more akin to the California statute because it permits the State's Attorney to exercise veto power over the court's exercise of its judicial authority to grant court supervision to a minor. Our decision in *In re T.W.* bears revisiting.

However, even if section 5–615(1) is not unconstitutional on separation of powers grounds, the statute raises, in my mind, equal protection concerns. I note that a similarly situated adult may be placed on supervision without the State's Attorney's approval. Section 5–6–1 of the Unified Code of Corrections (730 ILCS 5/5–6–1 (West 2004)) provides that, if a person is charged with committing certain offenses, including the Class A misdemeanor of "unauthorized possession or storage of a weapon," which is the basis for the finding of delinquency in the case at bar,

> "The court may, upon a plea of guilty or a stipulation by the defendant of the facts supporting the charge or a finding of guilt, defer further proceedings and the imposition of a sentence, and enter an order for supervision of the defendant, *** after considering the circumstances of the offense, and the history, character and condition of the offender, if the court is of the opinion that:
>
> > (1) the offender is not likely to commit further crimes;
> >
> > (2) the defendant and the public would be best served if the defendant were not to receive a criminal record; and
> >
> > (3) in the best interests of justice an order of supervision is more appropriate than a sentence otherwise permitted under this Code."

Thus, had the minor, D.D., been prosecuted as an adult, he could have received supervision whether or not the State's Attorney objected. A rational justification for this disparity in treatment is not apparent from the face of the statutes.

-19-

I observe, as well, that other jurisdictions permit juvenile court judges to grant orders of supervision or "consent decrees" without restriction. See, *e.g.*, *In re Rousselow*, 341 N.W.2d 760 (Iowa 1983) (interpreting Iowa Code §232.46); Fla. Stat. §985.35 (2007); Mass. Gen. Laws ch. 119, §58 (2006); N.J. Stat. Ann. §2A: 4A–43 (2006).

It is not my intent to cast aspersions on the State's Attorneys because they choose to prosecute juveniles in these cases. When a juvenile commits an act which constitutes a crime, it is the State's Attorney's role to prosecute and to seek adjudication so as to protect the public. However, giving the State's Attorney the authority to deny the grant of supervision to juveniles runs counter to the State's Attorney's prosecutorial role. As a practical matter, it is not reasonable to expect that the State's Attorney, while zealously and vigorously prosecuting his or her case in an effort to secure an adjudication, can then step back and make an objective determination regarding the minor's suitability to receive court supervision. See *e.g.*, *In re M.R.H.*, 326 Ill. App. 3d 565 (2001) (State insisted on prosecution of a minor for retail theft after he stole $0.59 cents worth of merchandise).

Whether leniency in the form of court supervision should be granted to a minor is a decision best left to an impartial and neutral party–the judge, who is mandated to ensure that the Act is "administered in a spirit of humane concern, not only for the rights of the parties, but also for the fears and the limits of understanding of all who appear before the court." 705 ILCS 405/1–2(2) (West 2004). The current statutory scheme takes this away.

In sum, after our decision today, juvenile court judges will no longer be able to vacate findings of delinquency based on the minor's subsequent good conduct. While juvenile court judges might have been able to achieve the same result by entering an order that the minor be placed on court supervision, that avenue, too, is foreclosed to them if the State's Attorney objects.

In light of the above, I urge the legislature to reexamine the Juvenile Court Act. In my view, our statutory scheme, which denies a juvenile court judge the discretion to vacate findings of delinquency based on subsequent good behavior, and also permits the State's Attorney to object to court supervision and, thereby, preclude the court from electing supervision as a disposition, unduly ties the hands

of the judge who is commissioned with the task of acting in the best interests of the minor and raises constitutional concerns.

JUSTICES FREEMAN and FITZGERALD join in this special concurrence.