Docket No. 108953.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

*In re* VERONICA C., a Minor (The People of the State of Illinois, Appellee, v. Veronica C., Appellant).

*Opinion filed September 23, 2010.–Modified upon denial of rehearing November 22, 2010.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

The respondent-minor, Veronica C., was adjudicated a delinquent in the circuit court of Kane County, the court having found that she violated section 12–3(a)(2) of the Criminal Code of 1961 (Code) (720 ILCS 5/12–3(a)(2) (West 2006) (battery)). She was thereafter placed on probation for a period of one year with attendant conditions and fees. Respondent appealed, arguing that section 5–615 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5–615(1) (West 2006)) violates constitutional provisions pertaining to equal protection and separation of powers insofar as it prevents a minor from being placed on supervision without the consent of the State. The appellate court rejected those contentions. No. 2–07–1155 (unpublished order under

Supreme Court Rule 23). We allowed respondent's petition for leave to appeal (210 Ill. 2d R. 315), and now affirm the judgment of the appellate court without reaching the constitutional issues it addressed.

BACKGROUND

On October 12, 2006, in the circuit court of Kane County, a petition was filed alleging that the minor-respondent was delinquent in that she had committed battery. In separate counts, the petition charged that respondent had violated section 12–3(a)(1) of the Code, in that she had knowingly caused bodily harm to Krila Cortes, and section 12–3(a)(2) of the Code, in that she had made physical contact of an insulting or provoking nature with Cortes. Though the conduct in question occurred on the property of a public school, as the cited sections indicate, the State chose to pursue only misdemeanor charges. Acting in part upon defense representations that the minor had no criminal history, the court decided that the minor respondent would not be detained pending trial.

The matter was tried on May 22, 2007. After hearing the evidence, the court found respondent guilty of the second count of battery–charging physical contact of an insulting or provoking nature–but not guilty of the first count, as the State had adduced no evidence of bodily harm. As the details of the offense are peripheral to the issues raised by the parties, we will summarize the findings of the trial court, and the version of events those findings support.

The prevailing testimony indicated that the victim, another student at respondent's school, was pushed and punched by respondent and her friends, and that respondent initiated the attack. Respondent and her group first encircled the victim in the school's gymnasium after school. After the victim successfully extricated herself from that confrontation, and went down into the locker room, respondent and another girl proceeded to the locker room where the respondent and the victim "bumped shoulders" in passing, inciting an attack on the victim in the shower area, wherein respondent and three of her friends participated.

In announcing its guilty verdict, the court singled out respondent's lack of credibility for comment:

"[T]he testimony is notable because the testimony of the

-2-

minor respondent *** is actually contradicted by every other single witness who testified in this case, including the defense's witness.

I don't think the testimony of the minor respondent *** and the teacher who testified can be reconciled. The teacher was very clear, the respondent said, it's on [meaning the attack on the other student]. That's what the minor said. So either Veronica is not telling the truth or the teacher is not telling the truth.

Krila testified that when she went upstairs to the gym, she was surrounded by the minor respondent and her friends in the gym, they made a circle around her. I think that's how the testimony about her saying, it's on, is relevant. I think that's what it refers to."

The court also stated that it did not believe respondent when she testified she went to the locker room to get her gym uniform. The court concluded its comments on respondent's credibility by noting that "respondent is the only one who testified that she both didn't push Krila first and also that she didn't hit Krila." As indicated, the court found the respondent "guilty" of battery and set the matter over for what the court referred to as a "sentencing hearing."

At that hearing, the minor respondent's mother, Saint, testified to the minor's domestic activities and her scholastic status. Further, the witness stated that the minor was seeing a psychiatrist at Streamwood Behavior Center and claimed that she had been diagnosed with "ADHD and impulse disorder." Saint testified that, subsequent to the coordinated attack on the victim at school, and during the time the minor respondent was awaiting sentencing, she had been in no trouble at school, no trouble with the law, no trouble at home, and no trouble with friends or neighbors. Asked about the possibility of community service, the witness responded: "I really don't think that she would be able to do the community service because of her disability and no one being there to actually *** , can I say, certified, to handle a situation if there's like, you know, outbursts and whatever."

Under cross-examination by the State, respondent's mother reiterated her belief that community service would not be an option because the minor "has an impulse disorder," "someone would have

to watch her," and there would be problems "sending her out with other kids." The witness was then asked about supervision after school:

> "THE STATE: So what happens when school is over, who supervises her between her last class when the teacher sees her and when she makes it to your home?
>
> WITNESS: We live right next door to the school, we're right next door.
>
> THE STATE: So you're saying she has constant supervision?
>
> WITNESS: Well, actually her sister was at school with her, so she walks right home everyday.
>
> THE STATE: So why wasn't she being supervised on October 10th, 2006, when she was in a fight in a locker room?
>
> WITNESS: You know I can't answer that because I wasn't there at the school, so I don't know what happened that day or what triggered her to go downstairs. I can't answer that.
>
> THE STATE: So there are times when she is not completely supervised?
>
> WITNESS: As far as like maybe standing with friends at school or something like that. I really don't know as far as with school, but I know at home she's supervised."

Asked if her daughter "should have any consequence for her behavior on October 10th," the witness responded: "As far as writing an apology letter, I mean, this is her first time ever being in a situation like this."

After respondent's mother testified, the court stated that it was prepared to hear argument, but first asked the State if it objected to court supervision. The State responded affirmatively, and was then directed to proceed.

In argument, the State urged the court to impose a term of 12 months' probation with appropriate conditions. In support of that position, the State observed that the minor respondent had incited the attack on the victim in the locker room, when respondent and her friends "did not have a reason to be in that locker room." Continuing,

the State pointed out:

> "[T]he purpose of the Juvenile Court Act is to hold minors accountable for their unlawful behavior and not to allow them to think that their delinquent acts have no consequences for themselves.
>
> And the State believes at this time if you were simply to close this minor's case, she would believe that her acts have no consequences. The minor's mother stated that [the minor-respondent] has impulse disorder and that she has outbursts. And the State would submit she's not being properly supervised if this is the case and she has outbursts.
>
> *** She shouldn't think that her behavior was okay and that she's gonna get a pass on it."

For her part, respondent's attorney acknowledged testimony concerning the minor's "impulse disorder," but noted that the minor had not been in any trouble pending her sentencing, and referenced the mother's testimony that the minor had not been in trouble prior to this offense. Counsel argued that the minor's mother was "very concerned about her and her behavior" and had "taken measures to improve the situation" insofar as she had taken her daughter to see a psychiatrist and had gotten her daughter on appropriate medication. Counsel also argued, notwithstanding the incident in question, that the minor respondent was "well-supervised" when at school. Counsel concluded:

> "We would ask, in light of this being her first case and her young age and the excellent care that her mother has taken to insure that this type of thing does not occur again, as well as Veronica making the choice to make sure that, in spite of struggling with some of these disabilities, making sure that this does not repeat itself, we would ask that you adjudicate and close this case."

Having heard arguments of counsel, the court announced its sentencing decision: "She's a first offender, I would give her court supervision if I could, but I'm not allowed to if the State objects, so she's gonna be placed on a year of probation."

On August 23, 2007, the respondent filed a motion to reconsider sentence, arguing that her sentence was excessive, that it violated the proportionate penalties clause of the Illinois Constitution (Ill. Const.

1970, art. I, §11)–quoting from that provision, but citing the due process and equal protection clause (Ill. Const. 1970, art. I, §2)–and that, "based on the evidence presented and the law, the Court should have made a finding that adjudicating her a delinquent and closing the case was an appropriate punishment for the Minor."

A hearing was held on the motion on October 10, 2007, in which counsel argued, *inter alia*, that respondent's sentence was excessive and disproportionate to that received by one of the other girls participating in the attack. Referring to that girl, counsel stated, "in the end her case was adjudicated and closed." Counsel suggested "there should be some symmetry between" the sentences. The State responded that "the sentence which is disproportionate to the crime is that of [the other offender]." The assistant State's Attorney reiterated her position that both of the minors should have been placed on probation; however, she noted, in support of the disparity, that this respondent actually incited the attack. In the end, the court agreed with the State: "Veronica is the one that started this. I think she deserves what I gave her, and the motion is denied."

Respondent appealed, arguing, as she does here, that section 5–615 of the Act "is an unconstitutional violation of separation of powers and equal protection because it allows the State to prevent the juvenile court from placing a minor on supervision." Before reaching the merits, the appellate court first addressed and rejected the State's argument that the matter was moot because respondent's period of probation had ended, relying upon the collateral-legal-consequences exception to the mootness doctrine. Citing separate subsections of section 5–915 of the Act, the court observed that a juvenile placed on court supervision would have been eligible to petition for expungement of her law enforcement and juvenile court records at the age of 17 (705 ILCS 405/5–915(1)(c) (West 2006)); whereas, an offender, like the respondent, who was "charged with a Class A misdemeanor and [was] sentenced to probation, *** may not petition for expungement until the age of 21. See 705 ILCS 405/5–915(2)(a) (West 2006)." No. 2–07–1155 (unpublished order under Supreme Court Rule 23). Quoting from this court's decision in *People ex rel. Devine v. Stralka*, 226 Ill. 2d 445 (2007), the appellate court noted that the extended preservation of juvenile records is one of "a number of collateral ways that the public is protected by the finding of

-6-

delinquency" and the appellate court concluded "[t]o hold that the distinction is not a collateral legal consequence in regard to mootness would essentially ignore that the legislature viewed the distinction as important to both the public and the juvenile." No. 2–07–1155 (unpublished order under Supreme Court Rule 23).

The appellate court also rejected the suggestion that respondent's constitutional contentions on appeal were forfeited, as they were not argued in the circuit court. The appellate court cited, *inter alia*, this court's holding in *People v. Wright*, 194 Ill. 2d 1, 23 (2000) (stating that the constitutionality of a criminal statute may be raised at any time). No. 2–07–1155 (unpublished order under Supreme Court Rule 23).

On the merits, the appellate court upheld the constitutionality of section 5–615(1) against both separation of powers and equal protection challenges.

With respect to the former, the appellate court observed that this court, in *In re T.W.*, 101 Ill. 2d 438 (1984), "upheld a challenge on separation of powers grounds to the identical statutory predecessor to section 5–615(1)." The appellate court considered *T.W.* "binding precedent" in this case. No. 2–07–1155 (unpublished order under Supreme Court Rule 23). As for more recent precedent, the appellate court went on to note that this court in *Stralka*, though it did not address the constitutionality of section 5–615(1), nonetheless "held that a juvenile court could not place a minor on probation and later vacate the delinquency finding, in part because doing so is tantamount to granting supervision 'and it essentially circumvents the State's right to reject supervision.' " No. 2–07–1155 (unpublished order under Supreme Court Rule 23), quoting in part *Stralka*, 226 Ill. 2d at 454. The appellate court again quoted from this court's disposition in *Stralka*, wherein this court concluded: " '[T]he statute simply does not give the [circuit] court authority to decide, in the face of an objection by the State, that even though a juvenile is guilty of a crime, the nature of the conduct does not warrant prosecution or a finding of guilt.' " No. 2–07–1155 (unpublished order under Supreme Court Rule 23), quoting *Stralka*, 226 Ill. 2d at 455.

As for respondent's equal protection challenge, the appellate court relied upon its own decision in *In re T.D.*, 81 Ill. App. 3d 369, 372 (1980), wherein it observed that adult offenders and juveniles

adjudicated delinquent are not similarly situated. Citing this court's opinion in *In re Presley*, 47 Ill. 2d 50, 56 (1970), the appellate court observed: "Indeed, the purpose of the Juvenile Court Act is to treat juveniles as differently situated, because the Juvenile Court Act has a legitimate and salutary goal to provide for the rehabilitation of delinquent minors before they have embarked upon the commission of substantive criminal offenses." No. 2–07–1155 (unpublished order under Supreme Court Rule 23). The court concluded that section 5–615(1) does not violate principles of equal protection.

## ANALYSIS

Of the arguments advanced by the State in this appeal, we find one dispositive, obviating the need to address any other issues raised by the parties. The State submits that the respondent has no standing to challenge the "consent" requirement of section 5–615 because it was not the prosecutorial objection that deprived the respondent of the opportunity to have her case continued under supervision. According to the State, by the time the circuit court inquired as to the prosecutor's position on supervision, supervision was no longer an option under the procedural framework of the Act, as a finding of guilt had already been entered. In the State's view, the prosecutor's position on supervision was at that point irrelevant. We agree with the State.

We have repeatedly emphasized the distinct nature of the three phases of juvenile delinquency proceedings as outlined in the Juvenile Court Act: the findings phase, the adjudicatory phase, and the dispositional phase. See *In re Samantha V.*, 234 Ill. 2d 359, 365 (2009); *Stralka*, 226 Ill. 2d at 451. As we noted in *Samantha V.* and *Stralka*, the findings phase consists of a "trial"–previously referred to as an "adjudicatory hearing" (see 705 ILCS 405/5–19 (West 1996))–in which the trial court applies the reasonable doubt standard of proof and the rules of evidence that would be followed in a criminal case, to determine whether the minor is guilty as charged and should thus be adjudged delinquent. *Samantha V.*, 234 Ill. 2d at 365 (citing 705 ILCS 405/5–605(3)(a) (West 2004), and *Stralka*, 226 Ill. 2d at 452). In a juvenile delinquency case, a finding of guilt and a finding of delinquency are one and the same. *Stralka*, 226 Ill. 2d at 456. In the event a finding of delinquency is entered, the matter proceeds to

-8-

sentencing. *Samantha V.*, 234 Ill. 2d at 365 (citing 705 ILCS 405/5–620 (West 2004), and *Stralka*, 226 Ill. 2d at 452). The sentencing proceeding includes the adjudication phase, where the court determines whether it is in the best interests of the minor and the public to make the minor a ward of the court. *Samantha V.*, 234 Ill. 2d at 365 (citing 705 ILCS 405/5–705(1) (West 2004), and *Stralka*, 226 Ill. 2d at 453). If the minor is adjudged a ward of the court, the matter proceeds to the dispositional phase, where the court fashions an appropriate sentence that will best serve the minor and the public. *Samantha V.*, 234 Ill. 2d at 365 (citing 705 ILCS 405/5–705(1) (West 2004), and *Stralka*, 226 Ill. 2d at 453). We reiterate the distinct phases of juvenile proceedings because important legal consequences attend each one, as this case amply demonstrates.

Section 5–615 of the Act provides in pertinent part:

"(1) The court may enter an order of continuance under supervision *** (a) upon an admission or stipulation by the appropriate respondent or minor respondent of the facts supporting the petition and before proceeding to adjudication, or after hearing the evidence at the trial, and (b) in the absence of objection made in open court by the minor, his or her parent, guardian, or legal custodian, the minor's attorney or the State's Attorney.

(2) If the minor, his or her parent, guardian, or legal custodian, the minor's attorney or State's Attorney objects in open court to any continuance and insists upon proceeding to findings and adjudication, the court shall so proceed." 705 ILCS 405/5–615(1), (2) (West 2006).

The clear intent of the legislature, as expressed in subsection (2) of section 5–615, is that the possibility of supervision be broached and considered, if at all, *before* "proceeding to findings and adjudication."[1] At that juncture, if the court is so inclined, and barring objection by any of the parties listed in subsection (1), the court "may" enter an order of supervision. We have found no statutory provision or rule

---

[1]For purposes of clarification, we note that the "adjudication" to which the legislature refers in section 5–615 is apparently an adjudication of delinquency, the formal culmination of first phase proceedings.

that requires the court to raise the prospect of supervision *sua sponte.*

Here, the court had already found respondent guilty and had set the cause over for adjudicatory and dispositional phases, inquiring, in the course of *those* proceedings whether the State objected to supervision. At that point, it no longer mattered whether the State or anyone else objected as the time for a continuance under supervision had passed, and the only dispositional alternatives remaining were those set forth in section 5–710 of the Act. See 705 ILCS 405/5–710 (West 2006). A "continuance under supervision" is not listed among them.

Respondent argues that "section 5–615 does not bar supervision for minors who are found guilty." She notes that an "admission in a juvenile delinquency case is the equivalent of a guilty plea in an adult criminal proceeding," and from that observation reasons that "the plain wording of section 5–615 contemplates that a finding of guilt (delinquency in this case) does not preclude supervision." This line of reasoning, which is not even relevant here, where the matter proceeded to trial, ignores the distinction between a *respondent's* action in admitting or stipulating to the facts supporting a petition and the subsequent action of a *court* in entering a finding of guilt or an adjudication of delinquency on the basis of the admission. A similar error or unwarranted inferential leap in analysis is evident in respondent's contention that the statute's reference to a court considering supervision " after hearing the evidence at the trial" necessarily encompasses a finding of guilt or delinquency thereafter. It does not. Where as here, the matter proceeds to trial, a court obviously would hear the evidence, and then, before entering a finding of guilt or delinquency, consider the option of a continuance under supervision. That is the procedural sequence the legislature intended. Any ambiguity that might result from the legislature's omission of the term "findings" in subsection (1) of section 5–615 is clarified in subsection (2), wherein the legislature specifies that supervision, and any objections thereto, must be considered before "proceeding to findings and adjudication."

In this case, no one broached the possibility of a continuance under supervision prior to the court's finding of guilt. The State's objection thereto during the phases that followed was irrelevant and thus did not adversely affect respondent.

A party may not raise a constitutional challenge to a provision of a statute that does not affect him or her. *People v. Malchow*, 193 Ill. 2d 415, 425 (2000). Since respondent argues neither ineffective assistance of counsel, nor plain error, we are not compelled to consider whether trial counsel's failure to raise the possibility of supervision prejudiced respondent–if in fact we were to find the provision in question unconstitutional–or whether the trial court's failure to raise the option of supervision at an earlier stage in the proceedings affected the fairness of proceedings below and challenged the integrity of the judicial process.

We note in passing respondent's nominal argument–two pages of her brief–that "the Juvenile Court Act actually authorizes supervision despite a prosecutorial veto," and her related suggestion that our "case law recognizes that the restriction which the trial judge placed on his authority [to continue the matter under supervision] does not exist." In support of her skeletal contention, respondent quotes, partially, and out of context, somewhat imprecise language employed in this court's concluding remarks in *T.W.* We here quote the sentence in its entirety:

> "We held in *In re J.N.* (1982), 91 Ill. 2d 122, 127-28, that section 5–3(2)(o) (Ill. Rev. Stat. 1981, ch. 37, par. 705–3(2)(o)), which is a subsection of the statute dealing with juvenile probation, allows the court to impose conditions of supervision after findings and adjudication." *T.W.*, 101 Ill. 2d at 442.

Of course, respondent's proposed interpretation of this sentence is diametrically opposed to the clear statutory prescription that a case cannot be continued under supervision after findings and adjudication. Moreover, that interpretation would completely eviscerate this court's holdings in *T.W.* and *Stralka*. If there were an independent basis in the Act that would allow the circuit court to continue a case under supervision over the objection of the State, then the provision upheld in *T.W.* and essential to the result in *Stralka* would be meaningless. Clearly, *T.W.* did not intend such an interpretation and we find none such is warranted, as even a cursory examination of *J.N.* and *T.W.* will confirm.

In *J.N.*–a case which respondent understandably does not discuss or even mention–this court found, notwithstanding the circuit court's

use of the term "supervision" in its orders, that the circuit court had, in substance, placed the minor respondent on "probation" or "conditional discharge." *In re J.N.*, 91 Ill. 2d 122, 128 (1982). This court came to that conclusion because the circuit court had previously entered a finding of guilt–the equivalent of a finding of delinquency–and had referenced as statutory authority section 5–3 of the Act (now section 5–715(u), upon which respondent relies), a provision which provides for dispositional orders of probation and conditional discharge. This court observed that the circuit court had not mentioned section 4–7, the predecessor of section 5–615, which allowed a continuance under supervision only *before* a finding of delinquency. See *J.N.*, 91 Ill. 2d at 128; Ill. Rev. Stat. 1977, ch. 37, par. 704–7. The minor in *J.N.* was placed on probation, not supervision, and the conditions ordered under section 5–3 (now section 5–715(u)) were conditions of *probation*, not supervision. Simply put, *J.N.* does not provide precedent for placing a minor on supervision under these circumstances.

Nor can we reasonably construe the single, enigmatic sentence at the end of this court's opinion in *T.W.* as the genesis of an independent basis for juvenile supervision. First, as previously noted, to do so would undermine the holding of that disposition, a result that was obviously not intended. Moreover, the sentence in question actually acknowledges that the subsection at issue is one appearing in a section pertaining to "juvenile probation." *T.W.*, 101 Ill. 2d at 442. Section 5–3(2)(o), now codified as section 5–715(2)(u), is essentially a catchall provision in a list of permissible conditions that may be ordered in conjunction with "probation" or "conditional discharge." Section 5–715(2)(u) does indeed allow a court to impose conditions *consistent with* court supervision after findings and adjudication, as *T.W.* suggests, but those conditions are ancillary to a disposition of probation or conditional discharge, not a continuance under supervision.

We acknowledge, in passing, respondent's contention that our literal reading of section 5–615's sequencing scheme inhibits the ability of "minor's counsel to freely argue that his client is not guilty without running the risk that the minor will lose the opportunity for court supervision," thus "restrain[ing] the minor from freely exercising his right to contest his guilt." Respondent's concern is surely more

hyperbolic than real, for any party, or the court, can raise the prospect of a continuance under supervision at any time prior to the entry of a finding of guilt. If, for example, a minor respondent chooses to have his case tried, counsel is free, at the conclusion of the evidence, to argue his client's innocence, while suggesting that supervision would be appropriate should the court be inclined to find the State had proven its case. Alternatively, the court might share its view of the evidence with the parties and broach the possibility of supervision prior to entering a finding of delinquency. In fact, subsection (2) of section 5–615 appears to *assume* consultation of the parties and the court after a trial, but prior to the entry of findings and adjudication, insofar as it states, upon an objection to a continuance under supervision by any party entitled to object, the court shall proceed "to findings and adjudication." Clearly, consultation is envisioned after trial, but before there is a formal finding of delinquency. Indeed, it is not a novel mode of procedure for a court to signal its intentions to the parties under certain circumstances. Analogous "what if" discussions are commonplace between the parties and the court when tentative plea agreements are undertaken pursuant to Supreme Court Rule 402(d) (177 Ill. 2d R. 402(d)). We thus reject the respondent's claim that the sequencing mandates of section 5–615 "restrain" the minor from freely exercising his right to contest his guilt.

In sum, respondent lacks standing to challenge the constitutionality of the statutory provision in question because she was not adversely affected by its operation. See *Malchow*, 193 Ill. 2d at 425. Consequently, we will not address the constitutional claims she raises. We recognize that lack of standing was not raised by the State in the appellate court; however, an appellee may raise any argument or basis supported by the record to show the correctness of the judgment below, even though he had not previously advanced such an argument. *People v. P.H.*, 145 Ill. 2d 209, 220 (1991). Moreover, this court, in determining the correctness of the result reached by the appellate court, is in no way constrained by the appellate court's reasoning and may affirm on any basis supported by the record. *People v. Durr*, 215 Ill. 2d 283, 296 (2005). Insofar as it affirmed the

judgment of the circuit court, the result reached by the appellate court was correct. On that basis, we affirm the judgment of the appellate court.

*Affirmed.*