# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *In re Danielle J.*, 2013 IL 110810

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* DANIELLE J., a Minor (The People of the State of Illinois, Appellant and Cross-Appellee, v. Danielle J., Appellee and Cross-Appellant). |
| Docket No. | 110810 |
| Filed | December 19, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Under the Juvenile Court Act, a continuance under supervision may only be granted prior to a finding of guilt, and, where this did not occur, the constitutionality of the Act's further provision that supervision must be approved by the State was no longer relevant—finding of statutory unconstitutionality vacated. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, the Hon. Terrence V. Sharkey, Judge, presiding. |
| Judgment | Circuit court judgment vacated in part and reversed in part.<br>Cause remanded. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People.

Abishi C. Cunningham, Jr., Cook County Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellee.

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, and Theis concurred in the judgment and opinion.

Justice Karmeier concurred in part and dissented in part, with opinion.

## OPINION

¶ 1    In the course of Danielle J.'s delinquency proceedings, the circuit court of Cook County declared section 5-615(1) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/5-615(1) (West 2010)) unconstitutional on its face and as applied to her. Section 5-615(1) provides that a juvenile who is not charged with committing first degree murder, a Class X felony or a forcible felony may obtain a continuance under supervision "(a) upon an admission or stipulation by the appropriate respondent or minor respondent of the facts supporting the petition and before proceeding to adjudication, or after hearing the evidence at the trial, and (b) *in the absence of objection made in open court by* the minor, his or her parent, guardian, or legal custodian, the minor's attorney or *the State's Attorney*." (Emphases added.) The circuit court held that the statutory authority given to the State's Attorney under section 5-615(1)(b) to object to the grant of a continuance under supervision violates separation of powers, equal protection and due process guarantees. The court then entered an order, over the State's objection, granting respondent a continuance under supervision for one year.

¶ 2    For reasons that follow, we find that the trial court erred in reaching the issue of the statute's constitutionality. We vacate that finding and remand for further proceedings consistent with our opinion.

¶ 3                                          BACKGROUND

¶ 4    On January 27, 2010, the State filed a delinquency petition against respondent, 15-year-old Danielle J., charging her with having committed a misdemeanor battery in violation of section 12-3(a)(1) of the Criminal Code of 1961(720 ILCS 5/12-3(a)(1) (West 2010)). The

petition alleged that Danielle J. was a delinquent minor because, on January 15, 2010, while at school, she knowingly caused bodily harm to her classmate, Jada M., by striking her in the face and chest.

¶ 5    On March 8, 2010, prior to the commencement of trial, the State offered to recommend a nine-month continuance under supervision in exchange for respondent's guilty plea. Respondent rejected the plea offer and the matter proceeded to trial. At trial, the State presented two witnesses—Jada M., the alleged victim, and Ivan Navarro, a security guard at Ace Technical Charter High School, where respondent and Jada attended classes.

¶ 6    Jada testified that on January 15, 2010, at about 10:30 a.m., she was in school and walking to a class when she was confronted by Alesha W., another student. Alesha was accompanied by three friends, one of whom was respondent. Jada testified that Alesha began to argue with her and then took a swing at her. When that happened, Navarro, one of the school's security guards, immediately intervened by stepping between her and Alesha. While Navarro was holding Alesha away from Jada, respondent came around the security guard and punched Jada in the face three to four times. At that point a second security guard arrived and took control of respondent.

¶ 7    Navarro testified similarly to Jada. He said that he saw Jada and Alesha begin to argue and immediately intervened by stepping between the two girls in an attempt to prevent them from hitting each other. Navarro also testified that while he was trying to keep Alesha and Jada apart, he looked to his left and saw that respondent was punching Jada in the face. Navarro testified that he saw respondent hit Jada three or four times with a closed fist before anyone was able to stop her. Navarro also testified that he did not see Jada hit respondent. After presenting this testimony, the State rested.

¶ 8    Defense counsel moved for a directed finding and the trial court denied the motion. Counsel then called respondent to the stand. In an effort to establish that she acted in self-defense, respondent testified as follows. On the morning of January 15, 2010, while attending Ace Technical Charter High School, respondent met with her friends, Alesha, Sierra, and Chastity, and walked with them to her next class. As they walked, Alesha told respondent that she wanted to "confront" Jada about something. Moments later, they saw Jada exit a classroom and start to walk in their direction. According to respondent, when Jada was about two to three feet away, Alesha started arguing with Jada. Respondent further testified that a security guard came up to Jada and Alesha as they were arguing in the corridor and stepped between them just as they both started throwing punches at each other. According to respondent, Jada was still throwing punches as the security guard held Alesha against the wall. Respondent claimed that one of Jada's punches passed by respondent's face, barely missing her. Respondent admitted that she was not sure whether Jada was swinging at her or Alesha. Nonetheless, she retaliated by punching Jada in the face. Respondent also testified that *both* she and Jada continued to fight with each other until another security guard stopped them.

¶ 9    After hearing closing arguments, the trial court rejected respondent's self-defense theory and found her guilty of misdemeanor battery. The court then continued the matter to April 8, 2010, "for social [history] and sentencing."

¶ 10    On April 8, 2010, the probation officer submitted his social history report to the court and recommended that respondent be sentenced to one year of probation. The State agreed with that recommendation, but suggested that respondent also be ordered to attend anger management classes. Defense counsel agreed that anger management classes would be appropriate, but asked if the court would consider "some sort of supervision" instead of probation.[1] The court responded:

> "THE COURT: Mr. Tountas [defense counsel], a good point, except juvenile law doesn't allow me to consider.
>
> And one of the problems I'm having with this case, and I'm taking it under consideration, is to [*sic*] whether to declare it unconstitutional as to Juvenile Court, whether or not after a trial I have to—basically what I have to do is get the State's permission to enter an order for supervision. That is not the case in the adult system.
>
> MR. TOUNTAS: That's correct.
>
> THE COURT: In the adult system, even after a trial a judge can enter an order of supervision.
>
> The only way around that, I think, would be to find it unconstitutional as applied to the minor. Due process, I believe, might be one argument for that. But simply go ahead and—you're asking me to consider that?"

¶ 11    The trial court, finding that it was prevented from granting Danielle a continuance under supervision by the State's Attorney's objection pursuant to section 5-615(1)(b), continued the dispositional hearing and asked both defense counsel and the State to prepare legal memoranda regarding the constitutionality of the State's Attorney "approval provision" in section 5-615. A new court date was set for June 17, 2010.

¶ 12    At the June 17, 2010, hearing, defense counsel submitted a written motion asking the trial court to grant Danielle a continuance under supervision over the State's objection. Counsel asserted that the trial court had the authority to enter such an order due to the fact that the State's Attorney "approval provision" in section 5-615 of the Act is unconstitutional. Counsel also submitted a memorandum of law, as requested by the court, in support of his claim that the State's Attorney "approval provision" in section 5-615(1)(b) is unconstitutional. Respondent was not present at this hearing and the trial court entered no ruling because the State did not have an opportunity to prepare a written response to respondent's motion or the memorandum of law regarding the constitutionality of the statute, as the court had requested. The court accepted defense counsel's tender of the documents and ordered the State to submit its response and memorandum of law by June 25, 2010. The matter was reset for disposition on July 1, 2010.

¶ 13    Before ending the hearing, the court asked the assistant State's Attorneys who were

---

[1] It is clear from the record that defense counsel's request for "some sort of supervision" was understood as a request for a continuance under supervision pursuant to section 5-615.

present[2] about the training they received and the guidelines they followed when deciding whether to offer or object to supervision. It was explained that assistant State's Attorneys receive no formal training and are given no written guidelines on this specific topic. It was noted, however, that newer assistant State's Attorneys, or "third chairs," generally receive training on plea offers from the "first chair" in the courtroom and this includes some instruction on when to offer supervision and when to oppose it.

¶ 14　　The court asked the assistant State's Attorneys if they were aware of the statutory guidelines used by courts for deciding when to grant supervision in adult court.[3] In the course of that discussion, Assistant State's Attorney Pillsbury pointed out that in respondent's case a recommendation of nine months' supervision had been offered to the respondent prior to trial, but was rejected. Assistant State's Attorney Pillsbury then commented:

> "And it's my understanding that in supervision, the idea of supervision is that the minor is put on supervision and then no finding will be entered if the supervision is term—is completed satisfactorily. *** In this case, there's already a finding entered, so the—I guess the point of supervision is moot. Since there's already been a finding, you can't go back and erase it."

The court responded,

> "Well, that's one theory, except in adult court, there can be a finding of guilty and the supervisions [*sic*] could still be entered. You're aware of that; that is correct?"

¶ 15　　The assistant State's Attorney admitted she had no experience in adult court and, therefore, was unsure of the procedure. The matter was then held over to July 1, 2010.

¶ 16　　At the July 1, 2010, hearing, defense counsel urged the court to declare the State's Attorney "approval provision" within section 5-615(1) of the Juvenile Court Act

---

[2]The assistant State's Attorneys in court on this date were Assistant State's Attorney Pillsbury and Assistant State's Attorney Rubner, who were standing in for Assistant State's Attorney Omar, who had been assigned this case, but was on vacation. Later, a supervisor, Assistant State's Attorney Kelley, came to the courtroom and joined in the discussion.

[3]The court was making reference to section 5-6-1(c) of the Unified Code of Corrections (730 ILCS 5/5-6-1(c) (West 2010)), which provides:

> "(c) The court may, upon a plea of guilty or a stipulation by the defendant of the facts supporting the charge or a finding of guilt, defer further proceedings and the imposition of a sentence, and enter an order for supervision of the defendant, if the defendant is not charged with [various misdemeanors or a felony]. If the defendant is not barred from receiving an order for supervision as provided in this subsection, the court may enter an order for supervision after considering the circumstances of the offense, and the history, character and condition of the offender, if the court is of the opinion that:
>      (1) the offender is not likely to commit further crimes;
>      (2) the defendant and the public would be best served if the defendant were not to receive a criminal record; and
>      (3) in the best interests of justice an order of supervision is more appropriate than a sentence otherwise permitted under this Code."

unconstitutional, contending that this provision violates separation of powers and equal protection, and is fundamentally unfair and inconsistent with the manifest goals of the Juvenile Court Act. Counsel then asked the court to grant respondent a continuance under supervision notwithstanding the State's Attorney's objection.

¶ 17    The State, on the other hand, argued that the "approval provision" in section 5-615(1) is constitutional. The State contended that the provision had previously been upheld in *In re T.W.*, 101 Ill. 2d 438 (1984), and in *People ex rel. Devine v. Stralka*, 226 Ill. 2d 445 (2007), and urged the court to find the statute constitutional for that reason. The State asked that a sentence of probation be imposed.

¶ 18    After hearing argument, the trial court entered the following ruling:

"In the matter before this Court now in *In Re Danielle J.*, 10JD336, after a trial, the minor was found guilty of a battery and no adjudication or sentence has yet to be entered. So supervision, under the current statute, 705 ILCS 405/5-615(1), is not barred assuming no veto by the State's Attorney. However, in this case, the State's Attorney has objected to the continuance under supervision."

¶ 19    The court then explained that it found the cases cited by the State to be distinguishable or unpersuasive. Further, the court held that, even if the statute were facially valid, *i.e.*, if it were constitutional, in general, for a State's Attorney to have the authority to object to an order of supervision, it found the State's Attorney's exercise of that right in this case unconstitutional. The court reasoned that the State had offered to recommend an order of supervision before trial, but later objected to supervision only because Danielle had opted to go to trial. The court found that this amounted to a "trial tax" and held that respondent's election to go to trial was not an appropriate factor for the State to consider when deciding whether to object to a grant of supervision. In addition, the court noted that the State claimed to be objecting to the order of supervision because Danielle's crime was one of violence, *i.e.*, battery. However, the court pointed out that the State was aware of the nature of the charged crime when it agreed to recommend supervision *before trial*. Thus, the court found this purported reason for the State's posttrial objection to be disingenuous.

¶ 20    Finally, the court noted that the State's memorandum confirmed that assistant State's Attorneys receive no formal training on when to agree or object to an order of supervision; that there is no written policy on when an assistant State's Attorney should agree or object to supervision; and there are no statutory guidelines in the Juvenile Court Act for determining when supervision might be an appropriate sentence, although there are statutory guidelines for granting supervision to adults (see 730 ILCS 5/5-6-1 (West 2010)). In light of these facts, the court held that the State's Attorney's exercise of her authority to object to an order of supervision was arbitrary and, as such, a violation of due process. The court declared section 5-615 of the Juvenile Court Act unconstitutional on its face and as applied to respondent, stating:

"In considering there is no rational basis for the *** legislature to treat similarly situated adults and juveniles differently with regard to a judge's authority to impose supervision, that constraining a judge's ability to grant a sentence of supervision is counter-intuitive to the Juvenile Court Act's specific goal of rehabilitation and the

-6-

Act's grant of discretion to the judge's determining the best interest of the juvenile and given the State's Attorney's veto power over the authority of supervision, I'm finding it to be a violation of separation of powers and of equal protection and of due process."

¶ 21    Having declared the State's Attorney "approval provision" in section 5-615 unconstitutional, the trial court entered an order granting respondent a continuance under supervision over the State's Attorney's objection. Pursuant to the order, Danielle was subject to court supervision for one year, during which time she was required to continue attending school, complete 20 hours of community service, and refrain from any gang, gun, or drug contact. Danielle also was referred to the Clinical Interventions Unit for anger management and individual counseling.

¶ 22    On July 13, 2010, the court amended the above ruling and, in conformance with Supreme Court Rule 18, issued an order finding section 5-615(1) of the Juvenile Court Act unconstitutional because it does not permit a continuance under supervision if the State's Attorney objects in open court. The grounds listed were: violation of separation of powers; violation of equal protection; and "violation of due process arbitrarily enforced."

¶ 23    The State appealed directly to this court pursuant to Supreme Court Rule 603 (eff. Oct. 1, 2010).

¶ 24                         ANALYSIS

¶ 25    Although the State comes before this court on direct appeal from the circuit court's ruling that section 5-615(1) of the Juvenile Court Act (705 ILCS 405/5-615(1) (West 2010)) is unconstitutional, the State presents no argument regarding the constitutionality of this statutory provision. Instead, relying on our decision in *In re Veronica C.*, 239 Ill. 2d 134 (2010), the State contends that the trial court erred in reaching the issue of the statute's constitutionality and, therefore, the ruling should be reversed.

¶ 26    We agree that our decision in *Veronica C.* controls the resolution of this appeal. In *Veronica C.*, the respondent-minor, like Danielle here, was charged with misdemeanor battery against a schoolmate, was tried and found guilty as charged. See *In re Veronica C.*, 239 Ill. 2d at 138. A continuance under supervision was not requested prior to the court entering a finding of guilt. After the matter proceeded past the first-phase proceedings[4] to adjudication and sentencing, defense counsel argued that Veronica should be adjudicated delinquent and her case closed with no sentence imposed. *Id.* at 141. The court rejected that proposal and imposed a sentence of 12 months' probation.

¶ 27    Veronica appealed to the appellate court, where, for the first time, she challenged the constitutionality of the State's Attorney "approval provision" in section 5-615(1). Veronica argued that the statute violates equal protection and separation of powers because it permits the State's Attorney to bar the circuit court from granting a minor a continuance under

_____

[4]In *Veronica C.* we explained that juvenile proceedings consist of three separate and distinct phases: the findings phase, the adjudication phase, and the dispositional phase.

supervision. The appellate court upheld the constitutionality of the statute and affirmed the circuit court's judgment and sentence.

¶ 28    We granted Veronica's petition for leave to appeal and affirmed the appellate court's judgment, but did not reach the issue of the statute's constitutionality. Rather, we held that Veronica lacked standing to challenge the constitutionality of the State's Attorney "approval provision" in section 5-615(1) because she had not been adversely affected by the operation of that provision. *Id.* at 147 ("A party may not raise a constitutional challenge to a provision of a statute that does not affect him or her.") (citing *People v. Malchow*, 193 Ill. 2d 413, 425 (2000)). In reaching that determination, we interpreted section 5-615(1) of the Juvenile Court Act as requiring "that the possibility of supervision be broached and considered, if at all, *before* 'proceeding to findings and adjudication.' " (Emphasis in original.) *Id.* at 146. "Adjudication" in this context, we said, meant an "adjudication of delinquency, the formal culmination of the first phase proceedings." *Id.* at 146 n.1. In light of our interpretation of the statute, we held that it was the failure to broach the subject of supervision prior to a finding of guilt being entered, and not the State's objection, which had prevented her from receiving a continuance under supervision. We concluded, therefore, that even if we were to hold the "approval provision" of the statute unconstitutional, Veronica would not be entitled to the relief she sought—a continuance under supervision—because the failure to request supervision prior to a finding of guilt being entered made the State's Attorney's objections irrelevant. Accordingly, we held that Veronica was unaffected by the statute's operation and, thus, lacked standing to challenge the statute's constitutionality. For that reason, we did not need to address that issue in her appeal.

¶ 29    In the case at bar, Danielle, like Veronica in *Veronica C.*, was statutorily precluded from obtaining a continuance under supervision once the trial court entered its finding that Danielle was guilty of misdemeanor battery. Thus, when Danielle's attorney requested supervision at the adjudication and sentencing hearing, that request came too late. See *In re Veronica C.*, 239 Ill. 2d at 146 (the plain language of the statute requires that the possibility of supervision be broached and considered, if at all, before proceeding to findings and adjudication). Furthermore, once the finding of guilt was entered, not only was defense counsel statutorily precluded from seeking a continuance under supervision, the trial court also was statutorily precluded from granting a continuance under supervision, regardless of whether the State's Attorney objected. For this reason, by the time Danielle's counsel sought a continuance under supervision at the adjudication and sentencing phases of the proceedings, the statutory veto power exercised by the State's Attorney was no longer relevant. Therefore, it was improper for the trial court to consider the constitutionality of the "approval provision" within section 5-615(1). We find that the trial court erred by doing so and, thus, vacate the finding of unconstitutionality. In addition, because the trial court lacked statutory authority to grant a continuance under supervision once it found Danielle guilty, its subsequent order granting Danielle supervision is void and must be reversed.

¶ 30    The State contends that upon reversing the order granting Danielle a continuance under supervision, we must remand the matter to the circuit court with instructions that the trial

court enter a disposition of probation. Danielle, however, argues in a cross-appeal[5] that she received ineffective assistance of counsel, or that plain error occurred which denied her due process, because neither her attorney nor the trial court applied or understood the plain meaning of the juvenile supervision statute and, as a result, failed to broach the matter of supervision at the appropriate time. She asks that we fashion an equitable remedy to address the prejudice she suffers as a result of her counsel's deficient performance and the fundamental unfairness of the proceedings. She suggests two possible remedies: (1) that we review the trial court's finding that section 5-615 is unconstitutional, or (2) that we remand the matter for a new first-phase proceeding. Thus, before we can decide the proper disposition of this case, we must consider whether, as Danielle argues, she received ineffective assistance of counsel or whether the proceedings were fundamentally unfair, constituting plain error.

¶ 31 There is no question that a minor charged with committing an offense, like Danielle here, is entitled to the effective assistance of counsel in juvenile delinquency proceedings. See *People v. Austin M.*, 2012 IL 111194, ¶ 76 (minors in delinquency proceedings have a nonwaivable statutory right to counsel, as well as a constitutional right to effective assistance of counsel). The standard utilized to gauge the effectiveness of counsel in juvenile proceedings is the *Strickland* standard, used in criminal cases. See *Strickland v. Washington*, 466 U.S. 668 (1984). Under this standard, ineffective assistance of counsel is established if the minor can demonstrate: (1) counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the minor. See *People v. Denzel W.*, 237 Ill. 2d 285 (2010); *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

¶ 32 Further, under Illinois Supreme Court Rule 615 and Illinois' plain-error doctrine, a reviewing court may consider defects in proceedings affecting substantial rights if a clear and obvious error occurred and that error affected the fairness of the proceedings and challenged the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). "Plain error" may properly be invoked where a court misapprehends or misapplies the law. See *People v. Wilkins*, 343 Ill. App. 3d 147, 149-50 (2003) (a trial court's misapprehension of a minimum sentence necessitates a new sentencing hearing when it appears that the trial court's misunderstanding influenced the sentencing decision); *People v. Miranda*, 329 Ill. App. 3d 837, 845 (2002) (reversal required where trial court denied defendant a forfeiture hearing based on its misapprehension of the law).

¶ 33 Section 5-615 permits an order of supervision "upon an admission or stipulation by the appropriate respondent or minor respondent of the facts supporting the petition and before proceeding to adjudication, or after hearing the evidence at the trial." We said in *Veronica C.* that the plain meaning of this language meant that, in juvenile delinquency proceedings, a continuance under supervision must be considered, if at all, prior to a finding of guilt being entered and the culmination of the first-phase proceeding. Danielle asserts that her attorney was deficient because he either did not know these requirements or misapprehended them.

---

[5]On August 28, 2012, we entered an order designating the second argument in respondent's brief as a cross-appeal.

Danielle also claims she was prejudiced as a result of her attorney's deficiency because he failed to inform her that she risked losing the opportunity to obtain a continuance under supervision by rejecting the State's Attorney's plea offer. In addition, because of her attorney's misapprehension of the law, he failed to request supervision after proceeding to trial, but before a finding of guilt was entered. As a result, she lost the opportunity to obtain a continuance under supervision. Danielle asserts that, had her attorney known that a continuance under supervision was statutorily precluded once a finding of guilt is entered, and had he communicated that to her, she would have accepted the State's plea offer and not gone to trial. Or, if she proceeded to trial, she would have requested supervision before a finding was entered.

¶ 34     Danielle also contends that her juvenile proceedings were fundamentally unfair because the trial court also misapprehended the plain meaning of the statute, *i.e.*, that a continuance under supervision is statutorily precluded once a finding of guilt is entered. Danielle concedes that, generally, a trial court has no obligation to broach the subject of a continuance under supervision after trial and before finding a respondent guilty. However, in this case the trial court's subsequent actions demonstrated that it believed that supervision was the proper disposition for Danielle. Therefore, the failure to broach the subject of a continuance under supervision at the proper time was a result of the court's misunderstanding of the plain language of the statute, which rendered the proceedings fundamentally unfair. Danielle was prejudiced because, absent the trial court's misunderstanding of the law, Danielle's opportunity to obtain a continuance under supervision would not have been lost.

¶ 35     We agree with Danielle. In *Veronica C.* we held that the plain language of the statute required that the subject of supervision be broached, if at all, prior to the court entering a finding of guilt. In the case at bar, however, both counsel and the court demonstrated a misapprehension of the law when they failed to broach the subject of a continuance under supervision prior to the entry of a finding of guilt. In fact, the record affirmatively demonstrates that both counsel and the court believed a continuance under supervision could be granted at the dispositional hearing, even though a finding of guilt had already been entered. Moreover, the trial judge repeatedly held that supervision was available to Danielle *but for* the State's objection and then granted Danielle a continuance under supervision over the State's Attorney's objection, finding the State's Attorney "approval provision" unconstitutional. The record clearly demonstrates that both counsel and the trial court were unaware that a continuance under supervision was *statutorily precluded* once a finding of guilt was entered. We find, therefore, under the circumstances of this case, the failure of both counsel and the trial court to raise the option of supervision at an earlier stage in the proceedings, before a finding of guilt was entered, was error which affected Danielle's substantial rights. We also find that Danielle received ineffective assistance of counsel, was prejudiced by her attorney's deficient performance, and that the trial court's error affected the fairness of the proceedings below and challenged the integrity of the judicial process. Danielle was prejudiced by these errors because they denied her the opportunity to obtain a continuance under supervision.

¶ 36     In *Veronica C.*, Veronica never argued ineffective assistance of counsel, plain error, or that "the trial court's failure to raise the option of supervision at an earlier stage in the

proceedings affected the fairness of proceedings below and challenged the integrity of the judicial process." See *In re Veronica C.*, 239 Ill. 2d at 147. As a result, we did not have the opportunity to consider what remedy should be afforded to someone who had established such claims. Here, Danielle suggests that a proper equitable remedy for her counsel's and the trial court's errors would be that this court review the trial court's finding that the State's Attorney "approval provision" in section 5-615 is unconstitutional. In the alternative, she asks that we remand this matter to the trial court for a new first-phase hearing.

¶ 37 We decline the invitation to consider the constitutionality of the section 5-615(1). Danielle, like Veronica in *Veronica C.*, is precluded by statute from obtaining a continuance under supervision because the subject of supervision was not raised prior to a finding of guilt being entered, not because of the State's Attorney "approval provision" within section 5-615. Thus, the constitutionality of the State's Attorney approval provision in the statute is not properly before this court.

¶ 38 We agree, however, that it would be appropriate to remand this matter for a new first-phase hearing. By doing so, Danielle could be properly advised by counsel that if she proceeds to trial and is unsuccessful, the grant of a continuance under supervision would be subject to the State's Attorney's approval and might be lost. In this way, Danielle would be able to make an informed and knowing decision about whether to accept the State's plea offer, should that offer be reinstated.

¶ 39 In the event that, upon remand, the State does not extend an offer of supervision and the matter should proceed to trial, Danielle would have the opportunity to request a continuance under supervision from the court prior to a finding being entered. This would not be a futile exercise because, as the State made clear at oral argument, there is no evidence that the State would have objected to a supervision order being entered at that juncture because Danielle never requested supervision prior to the court entering a finding of guilt. Of course, in the event that the State objects to the court granting Danielle supervision, Danielle could, at that time, properly raise a challenge to the constitutionality of the statute.

¶ 40 For the reasons stated above, we vacate the circuit court's finding that section 5-615 is unconstitutional. We reverse the order of supervision and remand to the circuit court for further proceedings consistent with this opinion.

¶ 41 Circuit court judgment vacated in part and reversed in part.

¶ 42 Cause remanded.

¶ 43 JUSTICE KARMEIER, concurring in part and dissenting in part:

¶ 44 As the majority acknowledges, the trial court lacked the statutory authority to grant a continuance under supervision once it found Danielle guilty. Consequently, its order granting Danielle supervision is void and must be reversed. Further, as the majority finds, it was improper for the trial court to consider the constitutionality of the "approval provision" within section 5-615(1). Thus, the circuit court's finding of unconstitutionality must also be vacated. However, for the reasons hereafter set forth, I disagree with the discussion that

underpins the majority's remand of this case for "a new first-phase hearing."

¶ 45    Danielle's claims of ineffective assistance of counsel and plain error are meritless, Neither the facts, nor the law, nor considerations of equity justify the remand that is the culmination of the majority's errant analysis. As the State suggests, this court should remand the matter to the circuit court with directions that the circuit court enter a disposition of probation.

¶ 46    The majority agrees with the arguments advanced by Danielle in her cross-appeal. See *supra* ¶¶ 33-34. Even a cursory examination of Danielle's brief exposes inherent inconsistencies in Danielle's position. Danielle's issue statement reads in part: "Danielle received ineffective assistance of counsel and/or she was denied due process where neither her attorney nor the trial court applied or understood the *plain wording* of the juvenile supervision statute such that each failed to broach the matter of supervision at the appropriate time." (Emphasis added.) A good part of the rest of the brief is devoted to showing us how "clairvoyan[ce]" would have been required to anticipate "the previously unarticulated interpretation of the supervision statute that this Court's decision in *Veronica C.* represents" and that neither trial counsel nor the circuit court could have seen it coming. So which is it? Were *both* so deficient in their understanding or remiss in their edification that they could not grasp the "plain wording" of the statute? Or were they both the innocent, but otherwise competent, victims of what Danielle would characterize as this court's blindsiding decision in *Veronica C.*?

¶ 47    If the latter, then Danielle cannot establish the first prong of *Strickland*, *i.e.*, that counsel's performance was deficient. As we noted in *People v. English*, 2013 IL 112890, ¶ 34, counsel is not deficient for failing to anticipate legal developments that could not have been foreseen.

¶ 48    Moreover, it is not clear that the trial court *was* confused. The court's statements during the proceedings leading up to its ruling on the statute's constitutionality demonstrate that it appreciated the difference between "supervision" and "probation." Therefore, its consistent references, immediately after trial, to "probation" as the most lenient disposition available in Danielle's case suggest that the court, at that point, understood the time for supervision had passed. After the trial judge advised Danielle he did not believe her version of events, and pronounced her guilty of misdemeanor battery, the court stated: "[Y]ou've been convicted of a misdemeanor battery today. It ranges from a penalty of *probation* to 364 days in jail." (Emphasis added.) Shortly thereafter, in the course of answering questions posed by Danielle's grandmother, the court again stated: "And, probation—I'll be honest with you, grandma, *probation's our first option*." (Emphasis added.)

¶ 49    When the case was again before the court, on April 8, 2010, the court first ascertained that "Mr. Blake," apparently the author of the social history report, believed a disposition of "one year of probation" was appropriate. Then, the court inquired of the assistant State's Attorney present, and was advised that the State "agree[d] with the Probation Officer's recommendation of one year probation." It was not until defense counsel mentioned "some

sort of supervision"[6] that the court itself first used that term, and it then became immediately apparent that the court had previously considered the constitutional implications of the provision requiring State consent, and that the court anticipated it might "make an interesting ruling"—though no one had raised the constitutionality of the statute to that point—and render a judgment that might take this case "straight up to the Supreme Court." However, even after the court expressed interest in being the vehicle for a ruling that would send the case on its way to this court, the circuit court *still* appeared to recognize that the time for supervision, in a juvenile court context, had passed, as evinced by the following statement: "In the adult system, *even after trial* a judge can enter an order of supervision." (Emphasis added.) The clear implication is the court's recognition that, in the juvenile court system, the trial and subsequent finding of guilt served as a procedural line of demarcation, beyond which supervision was no longer an option.

¶ 50    However, even assuming, *arguendo*, that both defense counsel and the court were oblivious to the applicable procedural sequence for consideration of supervision, neither this record nor case law supports a finding that Danielle suffered prejudice or that the proceedings were rendered fundamentally unfair.

¶ 51    With respect to the circuit court's role in the matter, the majority opinion engages in no meaningful analysis, and discusses no pertinent authority, before concluding that the circuit judge's supposed ignorance of the procedural sequence for considering supervision qualifies as the rare instance of second-prong plain error. It just is. The majority does not even *acknowledge*, much less address, our observation in *Veronica C.* that we were aware of no structural mandate—be it a "statutory provision or rule"—that "requires the court to raise the prospect of supervision *sua sponte*." See *Veronica C.*, 239 Ill. 2d at 146. In a brief, we would not have found it necessary to even consider unsupported contentions such as those that comprise the majority's analysis; they would have failed to comply with Rule 341. Here, they constitute the opinion of the court.

¶ 52    The linchpin of this court's ineffective assistance and plain-error "analyses" is the transparent fiction that the State might not have objected to supervision had the matter been timely broached by either defense counsel or the court. No experienced criminal practitioner, confronted with the facts of record, would consider, as realistic, this court's insistence that the State might, after Danielle's refusal to accept responsibility for her actions, and her rejection of a favorable plea offer, thereafter have countenanced the same favorable disposition. Beyond that, taking into account the aforementioned procedural history of the case, who could believe, in light of the State's persistent posttrial protestations that supervision would be inappropriate—based on cited factors which were all known *prior to trial*—that the State would have taken a different position immediately after the presentation of evidence at trial and before a finding of delinquency? Yet, this is—and must be—the centerpiece of this court's analysis if it is to find established either the prejudice prong of

---

[6]Unlike the majority, I see no evidence of record to indicate that counsel's ambiguous reference to "some sort of supervision" was, at that time, a specific reference to a continuance under supervision pursuant to section 5-615.

*Strickland or* second-prong plain error.

¶ 53    Given this statute's uncommon dispositional framework, the State had the statutory authority to take supervision off the table and, though defense counsel and the court could broach the matter, they could do nothing in that regard without the State's consent, which would obviously have been withheld here. The points identified by the State in oral and written argument as the bases for its decision were, as mentioned, all *pretrial* factors, as the following excerpt from the State's posttrial pleading makes clear:

"Although the People need not detail their rationale for objecting to the imposition of a term of supervision, it should be noted that there are several factors that support the People's ultimate position. First, as alluded to above, this is a case where the minor refused to accept responsibility for her actions. It is well established that individuals who admit they are guilty and accept responsibility for their actions are generally entitled to a benefit at sentencing. The minor, in choosing to refuse to accept responsibility for her actions, was not entitled to the benefit of a term of supervision.

Furthermore, the People also considered that the minor could very well have been charged with a felony for her actions of beating the victim on school grounds. By charging the minor with the misdemeanor offense of battery, the People had already given the minor a substantial benefit.

Finally, the People considered the facts, circumstances and nature of the crime when they objected to a term of supervision. This was not a property or possession crime. This is a crime where the minor physically beat another teenage girl in broad daylight on school grounds in front of a number of other students. Considering the level of violence that is escalating in our school system, a term of supervision for an individual who refuses to accept responsibility for her actions is unwarranted and irresponsible."

¶ 54    On the basis of the record before us, we cannot realistically say that the State, at the critical time, might have agreed to supervision. This court, in *People v. Rivera*, 227 Ill. 2d 1, 26-27 (2007), was able to examine the record on appeal and ascertain that a multifactor *Apprendi* violation was harmless beyond a reasonable doubt. We were able to say with certainty what 12 rational jurors would have found. Similarly, looking at this record, there is no doubt what the State's position would have been, with respect to supervision, at any point after Danielle rejected the State's favorable plea offer.

¶ 55    With respect to her rejection of that plea offer, Danielle claims she was prejudiced as a result of her attorney's supposed deficiency because he failed to inform her that she risked losing the opportunity to obtain a continuance under supervision by rejecting the State's Attorney's plea offer. In addition, she opines, because of her attorney's misapprehension of the law, he failed to request supervision after proceeding to trial, but before a finding of guilt was entered. As a result, Danielle concludes, she lost the opportunity to obtain a continuance under supervision. Danielle asserts that, had her attorney known that a continuance under supervision was statutorily precluded once a finding of guilt is entered, and had he communicated that to her, she would have accepted the State's plea offer and not gone to

trial. Or, if she proceeded to trial, she would have requested supervision before a finding was entered.

¶ 56    As previously indicated, it would not have mattered had counsel requested supervision at the critical time. As for Danielle's claim that counsel failed to inform her of the risk inherent in rejecting the State's plea offer, and her assertion that, had he communicated the risk to her, she would have accepted the offer, I would note there is not one shred of evidence in this record to support either allegation. Yet, this court takes that bare claim as an established fact (see *supra* ¶¶ 33, 38), and uses it as part of the justification for its remand "for a new first-phase hearing" (*supra* ¶ 38). This court's assumptions are unwarranted. There is no reason that Danielle should be afforded the opportunity to start from scratch, or that her adjudicatory hearing, which was apparently devoid of error, should be simply nullified.

¶ 57    At that hearing, the victim testified that she was alone when she and a girl in Danielle's group "had words." That girl hit the victim in the face. The victim stated that a nearby security guard stepped in to separate the girls—a fact corroborated by Ivan Navarro, the security guard. While the guard was in between the two girls, Danielle interjected herself into the situation. The victim testified that Danielle punched her three or four times before Danielle was pulled away by another security guard. Even then, according to the victim, Danielle "got loose and then the other security guard had to tackle her."

¶ 58    Ivan Navarro testified that the girl in Danielle's group swung at the victim first, and he stepped in to separate them. He then saw Danielle throw punches at the victim. He did not see the victim hit Danielle or provoke her.

¶ 59    Danielle testified in her own behalf, claiming self-defense.

¶ 60    The trial court rejected that claim, noting that Danielle came "from being three people back" to the forefront of the altercation, at which time she punched the victim. The court considered the security guard a "crucial witness," and observed that he corroborated critical aspects of the victim's testimony. The court concluded: "I do not buy into the affirmative defense in this case of self-defense." The trial judge stated he did not believe Danielle's story—the judge thought she lied.

¶ 61    I see nothing in this scenario, or this record, that would warrant the subversion of our jurisprudence in order to accommodate Danielle; however, the majority has gone to great lengths to do so.

¶ 62    What the majority is really doing—with no meaningful analysis or citation to pertinent authority—is saying that Danielle was prejudiced *solely* by *loss of standing* to raise an issue concerning the statute's constitutionality, because it is otherwise clear the State would not have consented to a continuance under supervision even if Danielle's counsel *had* timely broached that subject. The court is saying that counsel's supposed incompetence resulted in forfeiture of an opportunity to argue a constitutional issue before *this court*—counsel has already done so successfully in the circuit court—that may or may not have merit. That is the prejudice. That is the holding that parties may cite henceforth.

¶ 63    I cannot subscribe to that portion of the majority opinion.