NOTICE
Decision filed 08/22/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240441-U

NO. 5-24-0441

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* BRUCE M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Macon County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-JD-105 |
| | ) | |
| Bruce M., | ) | Honorable |
| | ) | Rodney S. Forbes, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's adjudication of delinquency is reversed where the evidence was insufficient to support a finding that minor had both knowledge and exclusive control of a handgun.

¶ 2    Following a bench trial, Bruce M., a minor, was adjudicated a delinquent minor pursuant to the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) on unlawful possession of a firearm (UPF) in violation of section 24-3.1(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-3.1(a)(1) (West 2022)) and aggravated unlawful use of a weapon (AUUW) in violation of section 24-1.6(a)(1), (a)(3)(A) of the Code (*id.* § 24-1.6(a)(1), (a)(3)(A)). The trial court sentenced Bruce to 12 months of probation. On appeal, he seeks reversal of his delinquency adjudication, contending (1) that the State failed to prove him guilty beyond a reasonable doubt

1

under either the UPF or the AUUW statutes; (2) that the UPF statute's age-based restriction violates the second amendment because it is inconsistent with our nation's historical tradition of firearm regulation following the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022); (3) that Bruce's AUUW adjudication pursuant to section 24-1.6(a)(1), (a)(3)(A) of the Code (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2022)) must be vacated where the statute was found to be unconstitutional and void in *People v. Aguilar*, 2013 IL 112116;[1] and (4) alternatively, pursuant to the one-act, one-crime doctrine, whether this court should vacate one of Bruce's two delinquency adjudications. Because we find Bruce's first claim to be dispositive, we will not address his remaining claims on appeal. For the following reasons, we reverse the trial court's adjudication of delinquency.

¶ 3                                    I. Background

¶ 4      Alicia Owens and her 17-year-old son, Bruce M., lived together in Mableton, Georgia, where Bruce attended high school. Bruce's father and grandmother resided in Illinois. Sometime prior to driving to Illinois, Bruce's mother purchased two firearms at a pawnshop in Georgia. On September 29, 2023, she was stopped for a traffic violation in Illinois. Bruce was in the front passenger seat, and four other young children were in the backseats of the minivan. During the roadside interview, Bruce's mother advised the officers she had two firearms in the vehicle, and provided consent for the officers to retrieve them.

¶ 5      The officers had Bruce exit the vehicle. A green/silver SCCY Roebuck Quadlock 9-millimeter firearm, serial number C406273, was discovered in Alicia's purse, and a black 9-

---

[1]It appears the State charged Bruce under the wrong subsection of the AUUW statute. Thus, the State conceded in its brief it did not prove that the Glock was a "firearm, other than a pistol, revolver, or handgun" in accordance with section 24-1.6(a)(1), (a)(3)(A) of the statute.

millimeter Glock 17 firearm, serial number BNXP924, was located under the front passenger's seat. Records from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) later confirmed that Bruce's mother had purchased both firearms at a pawnshop in Georgia.

¶ 6    Based on these events, Bruce and his mother were arrested. The State charged Bruce's mother with two counts of AUUW. Count I was for the unlawful possession of the Quadlock 9-millimeter handgun. Count II was for the unlawful possession of the Glock 17 9-millimeter handgun. Both counts alleged that Alicia was carrying the handguns without possessing a firearm concealed carry license (CCL) or a Firearm Owner's Identification (FOID) card.

¶ 7    The State filed a petition for adjudication of wardship alleging Bruce had committed two felony offenses: count I alleged that Bruce committed UPF in that he, a minor under the age of 18, "knowingly had in his possession a firearm, a black 9mm Glock 17 ***, which may be concealed upon the person." Count II charged Bruce with AUUW, alleging that he was a minor under the age of 21 and "knowingly carried[,] concealed on his person[,] an uncased and loaded 9mm Glock 17 *** at a time when he was not on his own land, or in his own abode, fixed place of business, and that 9mm Glock 17 *** was immediately accessible to the minor at the time he carried it."

¶ 8    On October 2, 2023, at Bruce's first appearance, the State asked the trial court to allow Bruce's return to Georgia because he was attending high school there. Bruce's mother, who was in custody at the Macon County jail, was present at Bruce's first appearance. The court appointed an attorney to represent Bruce. For various reasons, Bruce's arraignment was continued until February 20, 2024.

¶ 9    At the arraignment, Bruce and his mother appeared in court. Bruce's counsel advised the court that the parties had reached a negotiated disposition. Counsel explained that under the terms of the negotiated disposition, Bruce would plead guilty to count I, UPF, a Class 4 felony, and be

placed on 24 months of probation. Before the court could begin admonishing Bruce, his mother said, "Your Honor, the mother is not in agreement with the disposition." When the trial court asked Bruce if he wanted to plead guilty, the following colloquy occurred:

"THE MINOR: No, sir.

THE COURT: You don't want to plead guilty; is that correct?

RESPONDENT MOTHER: No.

THE MINOR: Oh. No. No, sir.

THE COURT: All right. So, for the record, the mother is saying 'No' to him, so he's following his mother's rules. So we don't have a plea agreement at this point."

¶ 10    Prior to the beginning of the trial on March 29, 2024, the trial court noted that the case file contained a sworn statement signed by Officer Nicholas Errett, indicating that Bruce's mother also had been charged with a "weapons offense as a result of this stop." The sworn statement, which was reviewed by the trial court, stated that officers made a warrantless arrest of Bruce and his mother after his mother was stopped for a traffic violation. Bruce's mother alerted the officers that there were two firearms in the vehicle and provided consent to retrieve them. One of the firearms, the Glock, was located under the passenger seat where Bruce had been sitting, and it had a clear, extended magazine which appeared to be "fully loaded with live/unfired 9mm bullets." During the interview, Bruce's mother told officers that both firearms belonged to her and that she had purchased them in Georgia. Bruce's mother said that Bruce had "shot the firearm before." Neither Bruce nor his mother had "an active FOID card nor a CCL."

¶ 11    At trial, the State called a single witness, Officer Clayton Zilz, one of the officers who had conducted the traffic stop. Officer Zilz's testimony largely reflected the information in the sworn statement. Bruce's mother was the driver, and Bruce was the front seat passenger. Officer Zilz

4

testified that Bruce's birthday was June 9, 2006, making Bruce 17 years old at the time of the traffic stop. Four young children were sitting in the back of the vehicle and were not properly secured. Detective Errett informed Officer Zilz that Bruce's mother had reported that she had firearms in the car, so Officer Zilz asked Bruce to exit the vehicle. When Bruce got out, Officer Zilz "observed what appeared to be, like, a black hard case sticking out from under the front passenger's seat." Officer Zilz testified that he was "familiar with gun cases" and that he believed the object was "some sort of handgun hard case." When Officer Zilz investigated further, he observed under the passenger seat a Glock 17 9-millimeter handgun, with a clear extended 30-round magazine sticking out of the magazine well. Officer Zilz further testified that the firearm was uncased, loaded, and immediately accessible to Bruce; however, it was not accessible to Bruce's mother. When asked whether Bruce could have seen the firearm based on where he was seated in the vehicle, Officer Zilz stated:

> "He couldn't have seen—I mean, he could have looked between his feet and seen it, but from my interaction with him, he never looked under the seat. I did not observe him look under the seat."

¶ 12   After Officer Zilz located the firearm under Bruce's seat, he advised the other officer to secure Bruce in handcuffs. Bruce immediately replied, "That's not mine." Detective Errett secured the Glock. The other firearm was located on the center console of the vehicle in Alicia's purse. Officer Zilz confirmed that the black "Glock hard case" was for the uncased Glock handgun. Officer Zilz believed he found a shell casing in the vehicle, but he could not recall the exact location. State's Exhibits 1 and 2 showed the Glock's position when the officers first observed it under Bruce's seat. State's Exhibits 3 and 4 showed the Glock after it had been collected into evidence.

¶ 13    Illinois State Police (ISP) forensic scientist Brian Long determined that there were no suitable latent prints on the Glock and that only one latent print that belonged to Bruce was found on the magazine. ISP forensic scientist Lauryn Vunetich determined that both firearms were operable. Officer Zilz testified that only the magazine came back with a fingerprint belonging to Bruce.

¶ 14    On cross-examination, Officer Zilz confirmed that it was the Glock hard case, and not the gun itself, that was sticking out from under Bruce's seat.[2] The officer also confirmed that Bruce's mother had stated that she had purchased the firearms.

¶ 15    Bruce testified that he planned to graduate in October 2024 and that he had passed every class last semester. His plans were to go into the Navy after graduation. Although he had not spoken to any recruiters, he had attended a program to help him get into the Navy. Bruce was aware that a conviction in this case would impact his ability to get into the Navy, but he was unsure if supervision would delay his ability to enter.

¶ 16    At the close of evidence, the trial court found that the State proved the elements of counts I and II beyond a reasonable doubt. The court found Officer Zilz to be a credible witness and noted that Officer Zilz saw a black hard case sticking out from beneath the front passenger seat, and then located the uncased, loaded Glock underneath the passenger seat, which was immediately accessible to Bruce. While recognizing that Officer Zilz did not observe Bruce look under the seat, the trial court found it significant that when Bruce was handcuffed, he stated, "That's not mine," referring to the Glock handgun. The court noted that another firearm was located on the center console in a purse, assumed to be owned and possessed by Bruce's mother.

---

[2]We note that People's Exhibit 1 appears to show the gun case completely exposed on the passenger floorboard, rather than "sticking out." However, Officer Zilz clearly testified that the gun case was "sticking out" from under the front passenger's seat.

¶ 17    The trial court determined that the issue in the case was whether or not Bruce knowingly possessed the Glock handgun. The court recognized that because the firearm was not located on Bruce's person, he was not in actual possession of it. The trial court stated, however, that "the evidence would suggest" that Bruce constructively possessed the firearm. The court added that while Bruce's mere presence in the vehicle was not evidence that he knew the Glock handgun was in the car, knowledge could be inferred by the visibility of the weapon from the minor's position in the car, the period of time in which the minor had an opportunity to observe the weapon, any gestures by the minor indicating an effort to retrieve or hide the weapon, and the size of the weapon. The court determined that Bruce did not have a possessory or ownership interest in the weapon or in the automobile in which the weapon was found. The court found, however, there was evidence that the handgun case was visible from where Bruce was seated in the minivan and that the handgun was located underneath his seat; thus, the handgun was immediately accessible to Bruce, only within his reach, and not in reach of his mother or the other children.

¶ 18    The court reiterated that Bruce, while being taken into custody, said, "it's not mine," and found this statement was "indicative of knowledge that the firearm was present in the vehicle and within his exclusive control." The court added that the fingerprint on the magazine showed that Bruce had at least touched the magazine which had been inserted into the firearm. Finally, the court found that the fingerprint was "circumstantial evidence of knowledge and showing that the Minor possessed or had—possessed and was in exclusive control of the weapon."

¶ 19    The parties immediately proceeded to sentencing because Bruce had no history of delinquency, the State was not asking for commitment to the Department of Juvenile Justice, and the attorneys wished to save Bruce from having to return from Georgia for sentencing. In

allocution, Bruce said that he would rather the case be thrown out, but if not, he asked for supervision because he did not feel like he had committed a crime.

¶ 20    The trial court adjudicated Bruce a ward of the court and found that 12 months' probation was the most appropriate sentence. The court found that Bruce was nearly 18 years old and was attending school but that he had committed a very serious offense—a gun offense. The court noted that although his fingerprints were on the extended magazine, Bruce denied it. His probation term was transferred to Georgia. Bruce filed the instant appeal.

¶ 21                                    II. Analysis

¶ 22    There are three phases of a juvenile delinquency proceeding specified in the Juvenile Court Act: "the findings phase, the adjudicatory phase, and the dispositional phase." *In re Samantha V.*, 234 Ill. 2d 359, 365 (2009). "The findings phase consists of a trial and determination of guilt." *Id.* "During this phase, the trial court applies the reasonable doubt standard of proof and the rules of evidence that would be followed in a criminal case to determine whether the minor should be found delinquent." *Id.* "In a juvenile delinquency case, a finding of guilt and a finding of delinquency are one and the same." *In re Veronica C.*, 239 Ill. 2d 134, 145 (2010).

¶ 23    On appeal, Bruce contends that the State failed to prove him guilty beyond a reasonable doubt under either the UPF or the AUUW statutes. Because the State conceded it did not prove the Glock found under Bruce's seat was a "firearm, other than a pistol, revolver, or handgun" in accordance with section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute, we limit our analysis to the defendant's claim of error under the UPF statute.

¶ 24    To sustain an adjudication for UPF pursuant to section 24-3.1(a)(1), the State had to prove beyond a reasonable doubt that Bruce (1) was under 18 years of age and (2) knowingly had in his possession any firearm of a size which may be concealed upon his person. 720 ILCS 5/24-3.1(a)

8

(West 2022). Bruce contends that the State failed to prove that he knowingly possessed his mother's Glock handgun.

¶ 25    Bruce's claim of error regarding his delinquency adjudication involves a challenge to the sufficiency of the evidence. Due process requires the State to prove all the elements necessary to constitute the crime alleged in a delinquency petition beyond a reasonable doubt. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 2; *In re Ryan B.*, 212 Ill. 2d 226, 231 (2004). The State bears the burden of proof beyond a reasonable doubt as to each of the essential elements of the offense. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 47. That burden never shifts to the minor. *People v. Weinstein*, 35 Ill. 2d 467, 470 (1966). Although the State may rely upon circumstantial evidence to prove each element of the crime charged, "there must be *some* evidence giving rise to a reasonable inference of defendant's guilt; the State may not leave to conjecture or assumption essential elements of the crime." (Emphasis in the original.) *People v. Laubscher*, 183 Ill. 2d 330, 335-36 (1998). "When determining whether the evidence against a defendant was sufficient to prove guilt beyond a reasonable doubt, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Hagberg*, 192 Ill. 2d 29, 33-34 (2000).

¶ 26    Because the trial court had the opportunity to observe and hear the witnesses, a reviewing court may not substitute its judgment for that of the trial court, particularly on issues of witness credibility, the weight their testimony deserves, or the reasonable inferences that may be drawn from their testimony or from other evidence presented. *In re Gabriel W.*, 2017 IL App (1st) 172120, ¶ 29. "Thus, it is the court's duty to carefully examine the evidence while giving due consideration to the fact that the trier of fact saw and heard the witnesses. [Citation.] If however, after such consideration the court is of the opinion that the evidence is insufficient to establish the

9

defendant's guilt beyond a reasonable doubt, it must reverse the conviction." *People v. Scott*, 367 Ill. App. 3d 283, 285 (2006). While the trial court's credibility determinations are entitled to great deference, "this deference does not require a mindless rubber-stamp on every bench trial guilty verdict we address." *People v. Hernandez*, 312 Ill. App. 3d 1032, 1037 (2000). An adjudication must be overturned where the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the minor's guilt. *People v. Givens*, 237 Ill. 2d 311, 334 (2010); *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001) (courts shall reverse when the evidence is improbable, unconvincing, or contrary to human experience).

¶ 27    Here, the trial court found that because the handgun was not located on Bruce's person, "the evidence would suggest" that Bruce constructively possessed the firearm. On appeal, Bruce contends that the State failed to prove beyond a reasonable doubt that he was in either actual or constructive possession of the handgun.

¶ 28    Possession of a firearm may be actual or constructive. *Givens*, 237 Ill. 2d at 335. A person is in actual possession of a firearm when he " 'exercised some form of dominion over the firearm, such as that he had it on his person, tried to conceal it, or was seen to discard it.' " *People v. Wise*, 2021 IL 125392, ¶ 24 (quoting *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27). "To establish constructive possession, the State must prove that the defendant knew contraband was present and that the defendant exercised immediate and exclusive control over the area where the contraband was found." *People v. Jones*, 2023 IL 127810, ¶ 30. Where control is established, an inference of culpable knowledge may be drawn from the surrounding facts and circumstances. *People v. Mallett*, 2023 IL App (1st) 220920, ¶ 65.

¶ 29    Bruce contends that the State failed to prove he had immediate and exclusive control over the area where the Glock handgun was found. "Control is established when a person has the 'intent

10

and capability to maintain control and dominion' over an item, even if he lacks personal present dominion over it." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)). "Exclusive control can include joint possession—if two or more people share immediate and exclusive control, or share the intention and power to exercise control, they each maintain possession." *People v. Tates*, 2016 IL App (1st) 140619, ¶ 25. A defendant's control over the location where a weapon is found gives rise to an inference that he possessed the weapon. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17.

¶ 30 In the context of contraband found in cars, ownership of the car is "highly probative" of the element of control. *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 32 ("It seems unquestionable that proof of one's ownership of a vehicle tends to make more likely the fact that that person also has control over the vehicle."). Further, "direct evidence of a defendant driving a vehicle is surely sufficient evidence of control." *Id.* ¶ 42.

¶ 31 Here, Bruce was a minor in the custody of his mother at the time she was pulled over for a traffic violation in Illinois. The evidence established that both guns belonged to her. Bruce argues that no evidence was presented that he exercised joint possession of the Glock handgun with his mother. We agree with Bruce's contention that his status as a minor belies the State's position that he had the authority to exercise immediate and exclusive control of the area where the Glock handgun was discovered in his mother's vehicle. The trial court even highlighted Bruce's lack of authority by refusing to allow Bruce to plead guilty without his mother's approval. We hold that there was insufficient evidence, circumstantial or otherwise, for any rational trier of fact to conclude that Bruce exercised immediate and exclusive control over the area where the handgun was discovered.

11

¶ 32    Assuming, *arguendo*, there existed sufficient evidence to prove exclusive control, there was insufficient evidence that Bruce knew that the Glock was under the passenger's seat of his mother's vehicle. Bruce contends that under the State's theory, a minor child is responsible for contraband placed in the parent's vehicle by the parent whether or not the minor knew it was present.

¶ 33    Without proof that a defendant knew a firearm was present, "individuals could be convicted of an offense for their mere presence in a vehicle in which a weapon was found." *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002). Typically, constructive possession is proven by circumstantial evidence, and the element of knowledge is rarely shown by direct proof. *People v. Smith*, 2015 IL App (1st) 132176, ¶ 26. Even so, "it is incumbent upon the State to present such evidence." *Bailey*, 333 Ill. App. 3d at 892.

¶ 34    An inference of knowledge can be made from consideration of the following factors: "(1) the visibility of the weapon from defendant's position in the car, (2) the period of time in which the defendant had an opportunity to observe the weapon, (3) any gestures by the defendant indicating an effort to retrieve or hide the weapon, and (4) the size of the weapon," and "any other relevant circumstantial evidence of knowledge, including whether the defendant had a possessory or ownership interest in the weapon or in the automobile in which the weapon was found." *Id*. Review of the record, however, reveals that the evidence presented by the State as to Bruce's knowledge focused only on the visibility of the weapon from Bruce's position in the car.

¶ 35    After Officer Zilz learned that Bruce's mother had two firearms in the vehicle, he asked Bruce to exit the vehicle. It was then that Officer Zilz observed what appeared to him to be a black hard case sticking out from under the front passenger's seat. He testified that because he was familiar with gun cases, he believed the object was some type of handgun hard case. Only after

12

investigating further did Officer Zilz observe the actual handgun under Bruce's seat. When specifically asked whether Bruce could have seen the handgun based on where he was seated in the vehicle, Officer Zilz initially stated that Bruce could not have seen it, before stating that if Bruce had looked between his feet, he could have seen it. Officer Zilz noted, however, that Bruce denied ever looking under the seat and the officer did not observe him doing so. Assuming that Bruce was familiar with gun cases, as was Officer Zilz, and further assuming that Bruce had noticed a portion of the case sticking out from under the seat, such facts are not even circumstantial evidence that Bruce had knowledge of an uncased handgun, completely hidden from view under that seat. There was no evidence that Bruce made any effort to retrieve or hide the handgun. Additionally, ATF records confirmed that Bruce's mother was the owner of both firearms, and there was no evidence that Bruce had a possessory or ownership interest in the vehicle, in which the handgun was found.

¶ 36     After the handgun was located under the passenger seat and Bruce was placed in handcuffs, he stated, "That's not mine." The State argues on appeal this statement supports a reasonable inference that he knew all along it was under his seat. The trial court found Bruce's statement was "indicative of knowledge that the firearm was present in the vehicle and within his exclusive control." We disagree. It was only *after* his mother informed the officers of handguns in her vehicle, *after* the retrieval of the Glock handgun, and *after* Bruce was secured in handcuffs, that Bruce denied the handgun was his. We fail to see how this statement could be indicative of knowledge that the handgun was under the seat *before* it was discovered.

¶ 37     We also fail to see how Bruce's fingerprint on the magazine was circumstantial evidence of his knowledge that the Glock handgun was under the passenger seat when his mother was pulled

13

over for a traffic violation in Illinois.[3] Although the trial court found that Bruce had denied that his fingerprint was on the magazine, review of the record reveals that Bruce made no such denial. In fact, Bruce was not asked whether he had ever handled the Glock handgun or whether he had touched the magazine, nor was it relevant to whether he knew that the handgun was under his seat when his mother was pulled over by officers in Illinois. Simply put, Bruce and four other children were in the vehicle driven by Bruce's mother along with her two handguns when she was pulled over. This is not enough to convict a minor for unlawfully possessing a firearm. Given Bruce's status as a minor and the parent-child dynamic, we find that Bruce was convicted based merely on his presence in his mother's vehicle. See *Bailey*, 333 Ill. App. 3d at 891.

¶ 38    Accordingly, we find that the State failed to carry its burden of proof beyond a reasonable doubt. Even viewing the evidence in the light most favorable to the State, we find that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Hagberg*, 192 Ill. 2d at 33-34.

¶ 39                                  III. Conclusion

¶ 40    For the foregoing reasons, we reverse the trial court's adjudication of delinquency.


¶ 41    Order reversed.

---

[3]On appeal, Bruce suggests that he "may have" handled the magazine in his home state of Georgia; this suggestion is of no consequence since no such evidence was presented to the trial court. Regardless, whether Bruce was aware that his mother owned the Glock handgun or had ever handled the magazine has no bearing on whether Bruce had knowledge of the presence of the handgun under the passenger seat of his mother's vehicle on the day in question.